[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Defendant Manuel Carralero, Jr. seeks to have plaintiff Rose Olexovitch CT Page 3132-ds found in contempt of court for her having interfered with the defendant's visits with the parties' seven year old child. For relief, he requests that the court sentence Ms. Olexovitch to jail for a definite term and impose remedial orders as to future visits and therapy sessions. The request to incarcerate the plaintiff is denied but the request for other relief is granted.
The plaintiff and defendant ended their relationship with each other while the plaintiff was pregnant with their child, Sophia. In 1995, the plaintiff filed a petition for custody, which was granted. In 1996, the defendant was granted supervised visitation. Recently, the defendant filed three motions for contempt that all relate to visitation.
In the first motion, the defendant alleges that the plaintiff interfered with visits that were scheduled for October 13 and 20, 1999, and thereby violated a court order that was entered by the court, Moran, J., on June 24, 1997. The order, which was issued orally in court, is as follows:
 Mrs. Olexovitch, you are ordered to encourage Sophia to enjoy visitation. You are not to discourage visitation. You are not, under any circumstances, to denigrate Mr. Carralero, nor to have friends and family denigrate or demean Mr. Carralero.
The defendant further alleges that "upon information and belief the plaintiff has manipulated Sophia to undermine the visitation with her father."
From May of 1998 to September of 1999, the defendant enjoyed supervised visits with Sophia at the Sterling Center in Shelton. The visits were supervised by a social worker, Andrea Ritter. The defendant's adult daughter, Barbara Carralero, facilitated the visits by driving her step-sister back and forth from the plaintiff mother's home to the Sterling Center. Ms. Ritter and Ms. Carralero testified that Sophia's mood during the visits was fine. At the last successful visit, they discussed with Sophia a plan to have the next visit occur outside of the Sterling Center premises. The defendant also discussed with Sophia his plan to seek a court order for unsupervised visitations. Thereafter, Sophia refused to go to the Sterling Center. On October 13, 1999, the child screamed and ran upstairs when Ms. Carralero arrived at the child's home to pick her up for the visitation session. On October 20, 1999, the child engaged in similar conduct.
The defendant father's second motion concerns a visit that was CT Page 3132-dt scheduled to occur at the Children's Center for Visitation in Fairfield on April 2, 2000. The defendant alleges that "upon information and belief the plaintiff has manipulated Sophia and instilled in her a fear and dislike for her father which is not her true feeling for him in order to undermine the visits and to prevent them from progressing to off-site locations and eventually unsupervised visitation." In February and March of 2000, the father and child visited at the Center under the supervision of Nicholas Sarno, who is the director of the Center. After six visits, Mr. Sarno recommended to the mother, father, and the child's attorney that the next visit occur outside of the center under controlled circumstances. Thereafter, the child's behavior changed. When Sophia was brought to the center on April 2nd she refused to go inside. She clung to her mother and stated that she was afraid of her father and Mr. Sarno and that she hated them. There was no visitation on this date.
The defendant's third motion concerns a visit that was scheduled for September 20, 2000. In this motion, the defendant alleges that "the plaintiff is in violation of the court's order in that she did not encourage the visitation of September 10th and did nothing to facilitate the transportation of the child to The [Children's] Center [for Visitation]." On this date, Mr. Sarno drove to the mother's home along with Ms. Carralero. When Mr. Sarno arrived, he was told by the plaintiff that the child did not want to go on the visit. Sophia yelled that she was not going, wrapped her arms around her mother, and, after Mr. Sarno touched the child, Sophia repeatedly kicked him and spat at him.
The court has carefully weighed the testimony of the witness and finds that the plaintiff mother has engaged in alienation behavior that has undermined the defendant's relationship with his child to such an extent that he has been unable to have unsupervised visits with the child. During the supervised visitation sessions, the child did not exhibit fear or anxiety in the presence of the defendant. Whenever unsupervised visitations were discussed or planned, the child's behavior changed by the time the next vitiation session was planned. The court concludes that the plaintiff mother willfully and intentionally violated the court order of June 24, 1997.
More important with respect to the adjudication of the present motions is the nature of the relief requested by the defendant. At the conclusion of the evidence, the defendant's counsel requested the court to imprison the plaintiff "to get through to her." This request is appropriate for criminal contempt but not civil contempt proceedings.
A failure to comply with a visitation order is an indirect civil CT Page 3132-du contempt. Kelly v. Kelly, 54 Conn. App. 50. 58, 732 A.2d 808 (1999). "The line of demarcation between criminal and civil contempt proceedings is in many instances indistinct and even imperceptible. A useful test, however, is the punishment imposed. When the punishment is purely punitive, imprisonment for a definite term or a fine for a certain sum of money, the contempt is said to be criminal. When the punishment is a remedial or coercive measure, commitment of a contumacious party until he complies with the mandate of the court or a fine until there is obedience to the court's order, the contempt is said to be civil. Board ofEducation v. Shelton Education Assn., 173 Conn. 81, 85-86, 376 A.2d 1080
(1977). "`[I]n civil contempt proceedings, the contemnor must be in a position to purge himself.' Otherwise the sanction imposed would cease to be remedial and coercive but would become wholly punitive in actual operation. . . . An order of confinement upon an adjudication of civil contempt must provide the contemnor with the key to his release in terms which are not impossible for him to satisfy." Mays v. Mays, 193 Conn. 261,266, 476 A.2d 562 (1984). To send the plaintiff to jail for a fixed and absolute term in order "to get through to her" and "send her a message", as requested by the defendant, would be a criminal penalty that is beyond the power of this court to impose in a civil contempt proceeding.
An appropriate remedy where a party wilfully refuses to allow visitation may involve conditional and coercive fines as well as remedial fines. See McTigue v. New London Education Association, 164 Conn. 348,353, 321 A.2d 462 (1973); Wilson v. Wilson, 38 Conn. App. 263, 266-67
(1995) (visitation issue); Tufano v. Tufano, 18 Conn. App. 119, 123,556 A.2d 1036 (1989) (visitation issue). Where an order of confinement is appropriate, the order must be conditional so that the contemnor has the key to his or her release. Imprisonment for a definite term is not a conditional order.
In a post-hearing memorandum, the defendant supplemented his request for relief by asking for an award of legal fees for defendant's counsel, legal fees for the child's counsel, fees for two witnesses, Nicholas Sarno and Andrea Ritter, who testified for the defendant, costs of missed visits, incarceration, and the imposition of two orders. No evidence was presented with respect to legal fees. The two witness were fact witnesses. The defendant did not claim at the hearing that they should be compensated as witnesses nor did he present evidence to show that he incurred any cost in presenting their testimony. There was no evidence with respect to the costs of the missed visits. According, the court concludes that remedial financial orders are not appropriate.
The defendant has requested the following remedial relief:
• imposition of an order modifying the current CT Page 3132-dv visitation schedule to the extent that the plaintiff shall deliver the minor child to The Children's Center for Visitation and shall leave the premises immediately and return upon completion of the visit to pick up the minor child.
• imposition of an order modifying the current visitation schedule to the extent that the plaintiff shall deliver the minor child to Dr. Deborah Gruen for therapy sessions and shall leave the premises immediately and return upon completion of the therapy session to pick up the minor child.
This request is reasonable and should be granted together with conditional fines so as to coerce the plaintiff's compliance.
For the foregoing reasons, the parties are ordered to appear in court on March 8, 2001, at 2:00 at which time the court intends to impose orders mandating future visits with the child's therapists and the father.
THIM, J.