DEBORAH TUFANO *v.* WILLIAM D. TUFANO
(6771)

SPALLONE, STOUGHTON and NORCOTT, Js.

Submitted on briefs December 8, 1988—decision released April 11, 1989

*J. Patrick Dwyer* and *Timothy J. Fitzgerald* filed a brief for the appellant (plaintiff).

*Louis Kiefer* filed a brief for the appellees (defendants).

STOUGHTON, J. The plaintiff has appealed from a judgment finding her in contempt as a result of violations of orders concerning visitation. She claims that the court erred (1) in denying a motion for a continuance, (2) in finding that her failure to comply with the visitation schedule was wilful, and (3) in ordering her to pay costs and attorney's fees, and a punitive fine.

The marriage between the plaintiff, now known as Deborah Ann Izzo, and the defendant was dissolved on February 20, 1986. The custody of the one child of the marriage, then almost three years old, was awarded to the plaintiff. The paternal grandparents of the child were given permission to intervene in the action and were granted certain visitation rights, both pendente lite and as part of the judgment.

The child's father, the defendant in the dissolution action, was an inmate in a Connecticut institution when the child was born, and remained incarcerated throughout these proceedings. The visitation order permitted the grandparents to take the child to the institution to

see his father. It is apparent from our review of the entire file that the visitation orders have given rise to friction between the plaintiff and the grandparents. The file contains eight motions for contempt filed by the grandparents and one citation for contempt issued at their request. In the file, there are three motions for modification filed by the plaintiff and three filed by the grandparents.

As part of the judgment granting the dissolution on February 20, 1986, the court granted visitation rights to the intervening paternal grandparents every second weekend each month. During these visits they were permitted to take the child to see his father. They also were allowed one full week during the summer and one day near Christmas.

The grandparents prepared a contempt citation, and a show cause order and summons was issued on November 16, 1987. The grandparents alleged that visitation during October and November had been denied to them. On November 27, 1987, the plaintiff filed a motion to modify the judgment and suspend visitation, alleging that the child did not want to visit the grandparents. On December 8, 1987, the plaintiff filed a motion for modification seeking to suspend visitation and alleging that the child did not want to visit either the grandparents or the defendant. On December 7, 1987, the grandparents filed a motion to modify the judgment by extending the visitation rights. On December 17, 1987, the grandparents filed a motion for contempt alleging that their December visitation had been denied them.

On December 17, 1987, the trial court held a hearing at which these matters were considered. The motions for modification were referred to the family relations division and the court ordered therapy for the child. The court further ordered that the December visi-

tation be made up as offered on the weekend of December 19, that the November visitation be made up by three days between Christmas and New Year's Day, that the October visitation be made up in January, 1988, and that there be visitation on December 22, 1987, as agreed upon. There also was an order that the plaintiff obtain a note from a doctor if it became necessary to cancel visitation for medical reasons.

On December 18, 1987, the plaintiff took the child to a psychologist who had seen the boy previously. The psychologist spent a few minutes with the plaintiff and talked to the child for about twenty minutes. He concluded that the child did not want to visit his father or his grandparents, and he told the plaintiff that, at least on a temporary basis, he saw nothing to be gained from forcing the boy to do so.

On December 18, 1987, the plaintiff telephoned the grandparents and told them that she had taken the child to a psychologist and that the grandparents could not pick him up the next day. On December 22, 1987, the grandparents drove to the residence of the plaintiff to pick up the child and rang the doorbell, but they received no response.

On December 28, 1987, the grandparents filed what they entitled their tenth motion for contempt, alleging the denial of visitation on December 19, 1987, and December 22, 1987. The plaintiff thereupon filed another motion to suspend visitation. The court scheduled these matters for a hearing on January 14, 1988, and cleared the calendar for that date.

On January 14, 1988, a lawyer from the office of the plaintiff's counsel requested a continuance on the ground that she had not handled the file and that the plaintiff preferred to have J. Patrick Dwyer handle the case. The motion for continuance was denied, and the lawyer who was present proceeded with the case.

Dwyer arrived from another court late in the day and examined the psychologist who had been called as a witness for the plaintiff.

The court found that the plaintiff had withheld visitation wilfully and that the plaintiff was in contempt of court for intentionally violating orders for visitation in October, November, December 19, 20 and 22, 1987, and the three days between Christmas and New Year's Day. In order to purge herself from contempt, the plaintiff was ordered to make the following payments: attorney's fees for the December 17, 1987 hearing of $500 plus costs of $58, to be paid on or before February 19, 1988; attorney's fees for the January 14, 1988 hearing of $500 plus costs of $48.17, to be paid on or before March 18, 1988; payment of $100 for each of five missed visits, a total of $500, payment to be made to the intervening grandparents by April 18, 1988.

The plaintiff's first claim of error arises out of her motion for continuance. A motion for continuance is addressed to the discretion of the trial court, and its ruling will not be overturned absent a showing of a clear abuse of that discretion. *Vossbrinck* v. *Vossbrinck,* 194 Conn. 229, 232, 478 A.2d 1011 (1984), cert. denied, 471 U.S. 1020, 105 S. Ct. 2048, 85 L. Ed. 2d 311 (1985); *State* v. *Thomas,* 15 Conn. App. 197, 201, 543 A.2d 1356 (1988). The burden of proof is upon the party claiming an abuse of discretion. *State* v. *Thomas,* supra, 202. We are especially hesitant to find an abuse of discretion when the motion is made on the day of trial. *Thode* v. *Thode,* 190 Conn. 694, 697, 462 A.2d 4 (1983). Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 538, 429 A.2d 801 (1980). This matter had been assigned for January 14, 1988, and it was imperative for the court to resolve the dispute which had been smouldering for some time. Contrary to the plaintiff's assertions, the proceedings were

not complex and were, in fact, straightforward. The plaintiff has not shown that she was prejudiced by being required to proceed before Dwyer had arrived and the trial court did not abuse its discretion in proceeding as it did.

The plaintiff next claims that the trial court erred in finding that her violations of the visitation orders were wilful. A wilful failure to comply with an outstanding court order may constitute a civil contempt, although a finding of contempt depends upon the facts and circumstances surrounding it. *Marcil* v. *Marcil,* 4 Conn. App. 403, 405, 494 A.2d 620 (1985). The plaintiff claims that she did not comply with the order for visitation in October because she was in Florida with her family that month. Her reason for not complying with the order in November was that the child did not want to go. In December, the plaintiff took the child to a psychologist who advised her that the child should not be forced.

The trial court had before it facts sufficient to support its findings. There is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid. *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 148, 496 A.2d 476 (1985). A fortiori, such an order may not be disobeyed simply because the alleged contemnor believes that it should not be obeyed. A contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. *Department of Health Services* v. *CHRO,* 198 Conn. 479, 487, 503 A.2d 1151 (1986). The plaintiff had the power to obey the orders of the trial court, and that court did not err in finding that her violations of its orders were wilful.

Finally, the plaintiff claims that the trial court erred in imposing costs, attorney's fees and fines upon the plaintiff.

This court's role in reviewing an order of contempt is very limited. Adjudications of contempt are final and may be reviewed only on questions of jurisdiction such as whether the court had authority to impose the punishment inflicted or whether the act for which the penalty was imposed could constitute a contempt. *Fox* v. *First Bank,* 198 Conn. 34, 39, 501 A.2d 747 (1985); *Friedlander* v. *Friedlander,* 191 Conn. 81, 84, 463 A.2d 587 (1983).

The penalties that may be imposed arise from the inherent common law power of the court to coerce compliance with its orders. *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 737, 444 A.2d 196 (1982). The court has the power to fine one who has been found in contempt; *Friedlander* v. *Friedlander,* supra, 86; and to enforce compliance through appropriate sanctions. *Blaydes* v. *Blaydes,* 187 Conn. 464, 467, 446 A.2d 825 (1982). In addition, General Statutes § 52-256b permits the awarding of reasonable attorney's fees and court costs to a petitioner upon a finding of contempt. Considering the number of contempt motions filed by the grandparents and the violations found by the court, we cannot say that the orders were an abuse of discretion. A court may use its own general knowledge of what would be a reasonable attorney's fee. *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 680, 443 A.2d 486 (1982). Here, the court ordered attorney's fees for the proceedings over which it had presided on December 17, 1987, and January 14, 1988. We find no abuse of discretion in these orders.

The plaintiff claims that she has no assets and that she is on welfare and unable to purge herself by payment. No financial affidavit was proffered on January 14, 1988, and the plaintiff has not called to our attention any evidence of her financial condition at that time. No objection was made at the time of the order that the court had not considered the financial condi-

tion of the parties, and no testimony was offered by either party on the subject. Thus, the trial court was invited to focus solely on the merits of the request and we will not review a claim made at this stage of the proceedings that the plaintiff does not have the means of payment. *Bielen* v. *Bielen,* 12 Conn. App. 513, 515, 531 A.2d 941 (1987).

There is no error.

In this opinion the other judges concurred.