## IN RE BRIANNA B.*
### (AC 20946)

Schaller, Mihalakos and O'Connell, Js.

Argued April 23—officially released November 6, 2001

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest theirein and upon order of the Appellate Court.

*Elias A. Alexiades*, for the appellant (petitioner).

*Karla A. Turekian*, assistant attorney general, with whom was *Inez Diaz-Galloza*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *David M. Teed*, assistant attorney general, for the appellee (respondent).

*Hilliary H. Horrocks*, for the minor child.

*Opinion*

SCHALLER, J. The petitioner appeals from the judgment of the trial court finding her in civil contempt of an order of confidentiality in a Juvenile Court proceeding. On appeal, the petitioner claims that the court improperly (1) issued the order of confidentiality in violation of her rights under the state and federal constitutions, (2) found her in contempt of the order of confidentiality and ordered her to pay attorney's fees to the respondent commissioner of children and families (commissioner), and (3) denied her motion to open the courtroom. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the petitioner's appeal. This appeal arises from Juvenile Court proceedings involving a minor child, B. On November 20, 1996, the department of children and families (department) placed B in the home of Bruce B. and the petitioner, to whom B later was presented by the department in November, 1997, for adoption. The Juvenile Court had terminated the biological parents'

parental rights to B in 1997 and appointed the department as B's statutory parent.

The department formally presented B to Bruce B. and to the petitioner for adoption, at which time Bruce B. refused to sign the adoption papers, apparently due to marital discord. The petitioner and Bruce B. divorced in 1998. The department removed B in October, 1998, concluding that to allow either Bruce B. or the petitioner to adopt B would not be in the best interest of the child.

On October 30, 1998, the petitioner filed a habeas corpus petition with the Juvenile Court, seeking the return of B. The Juvenile Court heard the matter and denied the petition on March 29, 1999. The petitioner also unsuccessfully challenged the removal of B through proceedings before the department.

During the habeas proceeding, the commissioner expressed concern that the petitioner was violating the confidentiality of the Juvenile Court proceedings. The court reminded all parties of the confidentiality of the proceedings. On July 1, 1999, the commissioner filed a motion for a protective order to enjoin the petitioner and her mother from disclosing confidential information regarding B. On September 10, 1999, the court granted the motion and ordered the petitioner not to disclose information regarding B.

On December 6, 1999, the commissioner filed a motion for a second protective order, seeking to preclude the petitioner from contacting or communicating with B. On February 22, 2000, the court heard the matter. During the hearing, the commissioner made an oral motion to reaffirm the confidentiality order, producing testimony from B's foster mother that photographs of B and case information had been posted on the Internet. The court ordered that the petitioner not disclose case information but allowed her to contact the office of

the child advocate or her legislative representative for assistance in the matter. The court also ordered the removal of information posted on the Internet.

On March 13, 2000, the commissioner filed a motion for a contempt finding against the petitioner for violating the confidentiality orders by failing to remove the information posted on the Internet, and adding more information and another picture to a web site on March 4, 2000. On May 9, 2000, the court heard the matter and found the petitioner in wilful contempt of the confidentiality orders. The court continued the hearing until May 23, 2000, to allow the petitioner time to conform to the orders. The court stated that if the petitioner complied with the orders, she would be ordered to pay to the commissioner the sum of $2500 in attorney's fees pursuant to General Statutes § 52-256b.[1] If she failed to comply, the court would impose a sentence of six months imprisonment. The court continued the matter on May 23, 2000, to June 6, 2000, after hearing testimony from the creator of the Texas based web site on which the information was posted. The court restated the penalties in the event of noncompliance by the June 6, 2000 hearing date.

On June 6, 2000, the petitioner filed a motion to vacate the confidentiality order and contempt finding. The court heard testimony from the commissioner and from Alan Brown, a witness for the commissioner, who testified as to technical considerations in removing information from the Internet. The court concluded that the petitioner had complied substantially with the order to remove the information from the Internet and reduced the attorney's fee award to $750. The petitioner now

---

[1] General Statutes § 52-256b (a) provides: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt."

appeals from the judgment finding her in contempt and ordering her to pay attorney's fees.

## I

The petitioner claims that the court improperly issued the order of confidentiality in violation of her rights under the state and federal constitutions.[2] We disagree.

We recognize at the outset "the presumption of confidentiality of juvenile records . . . ." *In re Sheldon G.*, 216 Conn. 563, 571, 583 A.2d 112 (1990) (discussing legislative history of General Statutes § 46b-124); see also Practice Book § 35-5 (b);[3] General Statutes § 46b-124 (a).[4] The commissioner construes the petitioner's argument as a claim that Practice Book § 35-5 and Gen-

---

[2] The petitioner claims that the court's actions violate article first, § 5, of the constitution of Connecticut. The respondent cites to *State* v. *Linares*, 232 Conn. 345, 363–87, 655 A.2d 737 (1995), for the proposition that the state constitution "provides greater protection of freedom of speech and of the press than the federal constitution." That statement with nothing more does not constitute an independent analysis of the state constitutional claim. See id., 379 (setting forth proper considerations provided in *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 [1992], for claimed violation under state constitution). We therefore deem abandoned the claim under the state constitution and restrict our review to the claimed violation under the federal constitution.

[3] Practice Book § 35-5 (b) provides: "All records maintained in juvenile matters brought before the court, either current or closed, including the transcripts of hearings, shall be kept confidential."

[4] General Statutes § 46b-124 (a) provides: "All records of cases of juvenile matters, as defined in section 46b-121, except delinquency proceedings, or any part thereof, and all records of appeals from probate brought to the superior court for juvenile matters pursuant to subsection (b) of section 45a-186, including studies and reports by probation officers, social agencies and clinics, shall be confidential and for the use of the court in juvenile matters, and open to inspection or disclosure to any third party, including bona fide researchers commissioned by a state agency, only upon order of the Superior Court . . . . Any record or any part thereof forwarded by said court or any of its employees to any persons, governmental and private agencies, and institutions, shall not be disclosed, directly or indirectly, to any third party not specified in subsection (c) of this section save upon order of said court or except in the report required under section 54-76d or 54-91a."

eral Statutes § 46b-124 are constitutionally infirm. We do not interpret the petitioner's argument as such. The petitioner claims that the court violated her rights under the first amendment to the United States constitution by virtue of its nondisclosure order, regardless of the statutory authority on which the order is premised.

There is little question that the court's order constitutes a prior restraint on the petitioner's first amendment rights.[5] As a restriction imposed on the petitioner's right to free speech, the order is permissible only if it is narrowly tailored to serve a compelling state interest. See *Perry Education Assn.* v. *Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). A "prior restraint on expression comes . . . with a heavy presumption against its constitutional validity." (Internal quotation marks omitted.) *Organization for a Better Austin* v. *Keefe*, 402 U.S. 415, 419, 91 S. Ct. 1575, 29 L. Ed. 2d 1 (1971). Prior restraints are considered "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Assn.* v. *Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976). The potential for encroachment on protected first amendment rights is greater in court-

[5] "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur. . . . Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." (Citation omitted; internal quotation marks omitted.) *Alexander* v. *United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993).

It is also important to clarify that we do not interpret the court's order to have been the issuance of an injunction; rather, it was an order made pursuant to General Statutes § 46b-121 (b) "to secure the welfare, protection, proper care and suitable support of a child or youth subject to its jurisdiction or otherwise committed to or in the custody of the Commissioner of Children and Families. . . ." As such, it was an order limited to the court proceedings pursuant to § 46b-121 (b) as opposed to an injunction ordered pursuant to General Statutes § 52-471. We find it significant that the court used the terms "order" and "contempt" rather than "enjoin" or "injunction." The distinction does not avoid our characterization of the order as a prior restraint.

ordered injunctions than with prohibitions contained in criminal statutes. See *Madsen* v. *Women's Health Center, Inc.*, 512 U.S. 753, 764, 114 S. Ct. 2516, 129 L. Ed. 2d 593 (1994); see also *Pittsburgh Press Co.* v. *Pittsburgh Commission on Human Relations*, 413 U.S. 376, 390, 93 S. Ct. 2553, 37 L. Ed. 2d 669 (1973) (danger in injunctions is speech is suppressed prior to adequate determination of whether speech is protected). To justify an order in the present case, the state must establish a compelling interest for the order and narrowly tailor the order to reach that end. See *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 606–607, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982).

The United States Supreme Court has acknowledged that a person's free speech rights are not without limits, and restrictions imposed on such rights may properly be based on the privacy interests of others. See *Rowan* v. *United States Post Office Dept.*, 397 U.S. 728, 737–38, 90 S. Ct. 1484, 25 L. Ed. 2d 736 (1970); see also *Hill* v. *Colorado*, 530 U.S. 703, 716–17, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000). The court has also emphasized the vitality of individual rights to free speech during legal proceedings, such as discovery, but that the right to free speech is not without limit. See *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20, 34–35, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984) (rights of those participating in discovery process remain strong, although considerations such as prevention of discovery abuse and protection of legitimate privacy interests may limit exercise of first amendment rights). Once information is within the public domain, a court may not punish its publication without a justification in the form of a state interest of the highest order. *Smith* v. *Daily Mail Publishing Co.*, 443 U.S. 97, 103, 99 S. Ct. 2667, 61 L. Ed. 2d 399 (1979); *Oklahoma Publishing Co.* v. *District Court*, 430 U.S. 308, 310–12, 97 S. Ct. 1045, 51 L. Ed. 2d 355 (1977).

We conclude that the court properly limited the first amendment rights of the petitioner to disclose information obtained during the course of a custody proceeding. The right to disclose information is not without limit and may be limited by legitimate privacy interests. See *Seattle Times Co.* v. *Rhinehart,* supra, 467 U.S. 34–35. The court must "make its own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance and then to balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression. The possibility that other measures will serve the State's interests should also be weighed." *Landmark Communications, Inc.* v. *Virginia,* 435 U.S. 829, 843, 98 S. Ct. 1535, 56 L. Ed. 2d 1 (1978).

An order of confidentiality involves the confluence of the petitioner's right to free speech and the juvenile's right to keep private information learned during closed proceedings. That emphasis on the rights of the juvenile is evident in the statutory presumption of confidentiality accorded such proceedings. We conclude that nondisclosure orders are a necessary part of the confidentiality of juvenile proceedings and that courts are empowered to issue such orders. Although an interest in simply maintaining the anonymity of juveniles is not sufficiently compelling to justify the imposition of fines on newspapers publishing the names of juveniles lawfully obtained; *Smith* v. *Daily Mail Publishing Co.,* supra, 443 U.S. 104–105; an interest in maintaining the confidentiality of facts disclosed in the course of the juvenile proceedings is sufficiently compelling to justify the prior restraint. The United States Supreme Court has suggested that the use of the contempt proceeding for publication of private facts is permissible as opposed to the impermissible punishment of those who lawfully obtain private facts and subsequently publish the facts. See *Landmark Communications, Inc.* v. *Vir-*

*ginia,* supra, 435 U.S. 841 n.12; see also *Branzburg* v. *Hayes,* 408 U.S. 665, 684, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972). The conclusion that the court may permissibly restrict disclosure of facts learned during the course of juvenile proceedings does not end our inquiry. We now direct our attention to whether the court narrowly tailored the order to serve that interest. See *Globe Newspaper Co.* v. *Superior Court,* supra, 457 U.S. 607.

It is evident that the court, in issuing the nondisclosure orders, considered that it could limit only disclosure of information obtained in the course of the proceedings and did not completely restrict the ability of the petitioner to speak out concerning matters that occurred during the proceedings. In the hearing on September 10, 1999, the court, noting e-mail messages on file, stated that "[t]here is an order in effect here that was issued by Judge Holden, and that order stated, keeping in mind . . . what the philosophy, or what the thought is of the state of Connecticut as far as children and their rights to have their matters be kept confidential and private. . . . [Judge Holden] wanted everything to remain confidential. And the rules are very clear, that everything is to be maintained within this court." The court later reminded all parties that "whatever takes place in this room today is confidential, not to be shared outside this room with any third party . . . ."[6] The court also stated that it could not stop the petitioner from conferring with a child advocate or her legislative representative. It did state, however, that "to go on the Internet or to talk to a newspaper, or to whatever, that is prohibited." The court also stated:

[6] The attorney for the petitioner, in response to the commissioner's oral motion pursuant to Practice Book § 35-1 to preserve the confidentiality of the proceedings on the basis of a concern that confidential information had been passed to a third party, stated: "I think that requires evidence," to which the court responded: "]W]hether or not it appeared on the Internet is not before me. The motion is that whatever takes place in here is confidential and cannot be shared outside of this room."

"I'm not making [a] finding that she went to the Internet." The court also stated: "[F]rom this day forward, there's no requesting, importuning, urging, advising anyone to make contact with the minor child or the preadoptive family. If that in fact happens from this day on, and you can prove that [the petitioner] was the starting point, then we'll be back in court on a contempt." The court continued: "[I]f someone [put the information on the Internet] for you, that puts you in violation of my order as of today."

The order imposed on the petitioner was narrowly confined to the Juvenile Court proceedings. The court did not restrict the petitioner's ability to speak freely about matters of which she had prior knowledge. The court also did not absolutely bar any discussion of the proceedings, permitting the petitioner to discuss the proceedings with a child advocate or her legislative representative. The court thus narrowly tailored the order; see *Globe Newspaper Co.* v. *Superior Court*, supra, 457 U.S. 607; restricting the nondisclosure order to matters arising in the course of the Juvenile Court proceedings. See *Seattle Times Co.* v. *Rhinehart*, supra, 467 U.S. 34–35.

Other courts, presented with similar first amendment concerns, have held court orders compelling parties not to disclose confidential information from juvenile proceedings acceptable when not overbroad. See *In re Tiffany G.*, 29 Cal. App. 4th 443, 451–52, 35 Cal. Rptr. 2d 8 (1994) (holding nondisclosure order against mother, stepfather not to violate first amendment rights) (review denied December 22, 1994); *In re Minor*, 149 Ill. 2d 247, 255, 595 N.E.2d 1052 (1992) (finding significant juvenile's interest in privacy during abuse proceeding as predicate for finding court order did not violate respondent's free speech rights); see also *In re J.S.*, 267 Ill. App. 3d 145, 153–54, 640 N.E.2d 1379 (1994), appeal denied, 159 Ill. 2d 568, 647 N.E.2d 1010 (1995).

We conclude that the court did not violate the petitioner's rights under the first amendment to the United States constitution by issuing its nondisclosure order.

## II

The petitioner next claims that the court improperly found her in contempt of the order of nondisclosure. We disagree.

As a result of alleged violations of the nondisclosure order, the commissioner filed a motion for a finding of civil contempt against the petitioner.[7]

"[O]ur review [of a finding of civil contempt] is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . the contemnor's constitutional rights were not properly safeguarded . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey

---

[7] The commissioner filed her motion for a finding of both criminal and civil contempt pursuant to Practice Book §§ 1-13A, 1-14 and 1-21A. The action was taken pursuant to a motion for contempt as compared to the filing of an information, which generally is required for criminal contempt proceedings where the misconduct does not occur in the presence of the court. See Practice Book §§ 1-14, 1-17 and 1-18. The offense was against the privacy rights of B, a party to the action, rather than against the dignity of the court. See Practice Book §§ 1-14, 1-21A. We conclude that the claim was therefore one of civil contempt, not criminal contempt.

the court's order." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 527–28, 710 A.2d 757 (1998). A court's finding of contempt is reviewed under an abuse of discretion standard. *Bunche* v. *Bunche*, 36 Conn. App. 322, 324, 650 A.2d 917 (1994).

The petitioner argues that the court did not have an adequate basis on which to find her in civil contempt. She contends that the only evidence considered by the court was the posting of B's first name on the Internet, the judge's name and the relevant time frame of the proceeding. The record reveals otherwise.

On the day of the hearing at which the court found the petitioner to be in contempt, the commissioner adduced evidence as to the content of various web sites. One site contained the aforementioned information, but there was also a picture of the child identified by name. The site also identifies the petitioner by name and identifies the child as being "in her care." Other sites contained detailed information about B, including when she was born and the proceedings that were initiated by the commissioner. The commissioner asked the court to draw the inference that any information involving confidential juvenile proceedings was garnered from the petitioner directly or from the petitioner through her mother. The petitioner countered that information disclosed could not be retracted; once on the Internet, the information became irretrievable. The court considered that fact in allowing a continuance for two weeks to allow the petitioner to purge the contempt.

We conclude that the court did not improperly find the petitioner in contempt of the order. The order as given was neither unconstitutional nor unclear; see *Eldridge* v. *Eldridge*, supra, 244 Conn. 527–28; and the court did not abuse its discretion in finding that the petitioner did not sufficiently conform to the order as

given. See *Bunche* v. *Bunche,* supra, 36 Conn. App. 324. The court, therefore, did not act improperly.

The court similarly did not act improperly in denying the petitioner's motion to vacate the confidentiality order. See *State* v. *Rothenberg,* 195 Conn. 253, 264, 487 A.2d 545 (1985) (standard of review for court's denial of motion to vacate judgment is abuse of discretion). The court properly considered the relevant statutory and constitutional provisions in concluding as it did. Accordingly, its denial of the motion was not an abuse of discretion.

The court also did not abuse its discretion in awarding attorney's fees in the amount of $750. See General Statutes § 52-256b (a); *Lord* v. *Mansfield,* 50 Conn. App. 21, 34, 717 A.2d 267 (abuse of discretion proper standard of review), cert. denied, 247 Conn. 943, 723 A.2d 321 (1998). "Sanctions for civil contempt may be either a fine or imprisonment; a fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained. . . . The fine imposed for a civil contempt may be payable to the complainant as compensation for his loss." (Internal quotation marks omitted.) *Lord* v. *Mansfield,* supra, 34. Our review of the record fails to disclose any abuse of discretion, nor has the plaintiff demonstrated such abuse.

## III

The petitioner also claims that the court improperly denied her motion to open the courtroom. We disagree.

The proceedings in this case were civil, not criminal, in nature. Juvenile Court proceedings may be closed or open at the court's discretion. See General Statutes § 46b-122.[8] Section 46b-122 designates the judge over-

[8] General Statutes § 46b-122 provides in relevant part: "All matters which are juvenile matters . . . shall be kept separate and apart from all other business of the Superior Court as far as is practicable . . . . Any judge hearing a juvenile matter shall, during such hearing, exclude from the room

seeing juvenile proceedings as a gatekeeper, keeping out those without a direct interest in the matter.

Unlike criminal courts, which are "presumptively open"; *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 11, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986); competing interests may warrant denial of access to proceedings in some circumstances. *United States* v. *Three Juveniles*, 61 F.3d 86, 94 (1st Cir. 1995), cert. denied sub nom. *Globe Newspaper Co.* v. *United States*, 517 U.S. 1166, 116 S. Ct. 1564, 134 L. Ed. 2d 664 (1996); see also *Globe Newspaper Co.* v. *Superior Court*, supra, 457 U.S. 607–608 (identifying compelling interest in shielding juvenile victims of sex crimes from further trauma, embarrassment). The interests of protecting the privacy interests of a juvenile in the process of adoption satisfies such a compelling interest. See *Smith* v. *Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 845, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977) ("the liberty interest in family privacy has its source, and its contours are ordinarily to be sought, not in state law, but in intrinsic human rights"); *Alma Society, Inc.* v. *Mellon*, 601 F.2d 1225, 1236 (2d Cir.) (acknowledging at least "important interest" in protecting privacy of natural parents in justifying sealing of adoption records), cert. denied, 444 U.S. 995, 100 S. Ct. 531, 62 L. Ed. 2d 426 (1979); *M.P.* v. *Schwartz*, 853 F. Sup. 164, 169 (D. Md. 1994) ("there is a compelling governmental concern in preserving the confidentiality of identity of the minor Plaintiff and her family"); see also *LaChapelle* v. *Mitten*, 607 N.W.2d 151, 164 (Minn. App.) (compelling interest in "best interests" of child during custody dispute), review denied, cert. denied, 531 U.S. 1011, 121 S. Ct. 565, 148 L. Ed. 2d 485 (2000); *Johnson* v. *Johnson*, 134 Ohio App. 3d 579, 585, 731 N.E.2d 1144 (1999) (compelling interest in child's health, welfare); *Common-*

---

in which such hearing is held any person whose presence is, in the court's opinion, not necessary . . . ."

*wealth* v. *Nixon*, 563 Pa. 425, 435, 761 A.2d 1151 (2000) ("state's interest as parens patriae in the very life of an unemancipated minor is a compelling interest"), cert. denied, 532 U.S. 1008, 121 S. Ct. 1735, 149 L. Ed. 2d 659 (2001).

The court did not abuse its discretion in denying the motion to open the proceedings. Its decision is grounded in the statutory mandate of § 46b-122, the constitution of the United States, and relevant privacy concerns pertaining to custody and adoption proceedings. Accordingly, the court did not act improperly in denying the motion.

The judgment is affirmed.

In this opinion the other judges concurred.