GINA M. G. *v.* WILLIAM C.[1]
(AC 22187)

Dranginis, West and Hennessy, Js.

---

[1] In accordance with *General Statutes* § 54-86e, and our policy of protecting the privacy interests of minor children, we decline to identify the child or others through whom the child's identity may be ascertained.

Argued February 26—officially released June 24, 2003

*Carole D. Brown*, for the appellant (plaintiff).

*Glenn Gazin*, for the appellee (defendant).

*Opinion*

DRANGINIS, J. This matter has been the subject of extensive, unnecessary litigation in which a minor child has been the pawn in a parental conflict in the court system. The plaintiff mother, Gina M. G., appeals from the postjudgment orders of the trial court concerning

the right of the defendant father, William C., to have unsupervised visitation with the parties' child, the court's finding that the plaintiff was in contempt for violating visitation orders, and the imposition of a fine and awarding of attorney's fees for the contempt. On appeal, the plaintiff claims that the court abused its discretion by (1) terminating supervised visitation (a) where evidence showed that the child was credible and the defendant was being charged with sexual abuse and risk of injury to a child in separate proceedings, and (b) where the court relied on facts not in evidence or misinformation, and (2) improperly finding the plaintiff in contempt and granting attorney's fees where (a) the plaintiff's actions were not wilful and (b) the attorney's fees were unreasonable.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of the plaintiff's appeal. The plaintiff and the defendant have one daughter, born in 1996 in California. The parties' three year extramarital relationship ended soon after the birth of their daughter.[3] A litany of accusations and legal actions ensued thereafter, in the state and federal courts of California and Connecticut, including numerous criminal, civil and family court actions. The parties initially agreed to joint legal custody of their child, with physical custody in the plaintiff and specified visitation for the defendant. The plaintiff, however, moved to Connecticut in 1997, and after litigating the matter, was able to continue living with the child in Connecticut while the defendant traveled from California to visit with the child.

Beginning in 1999 and continuing to the present time, the parties have inundated our legal system with multi-

---

[2] The plaintiff's first and third claims have been distilled into the first claim discussed in this opinion in light of the fact that both the plaintiff's claims concern evidentiary findings.

[3] The plaintiff was not married at the time of the affair and has not married. The defendant was married at the time of the affair and remains married.

ple proceedings involving numerous counsel for both parties, several guardians ad litem, orders by various judges, criminal charges and restraining orders, mediation, and two extensive trials that included copious numbers of witnesses and experts, and more than 100 exhibits. The majority of the actions and motions brought before our courts were filed by the plaintiff, who repeatedly presented the same evidence concerning the same set of issues: The defendant's right to access to his child. The court, *Cutsumpas, J.*, initially held, on July 14, 2000, that the plaintiff and defendant would share joint legal custody of the child and awarded physical custody to the plaintiff. The defendant was granted supervised visitation through August, 2000, and unsupervised visitation beginning in September, 2000.

The plaintiff subsequently alleged that the defendant had sexually abused their child. The child's pediatrician, the Yale-New Haven Sexual Abuse Clinic, the department of children and families, a forensic pathologist, a licensed clinical investigator, and a counselor and the court listened to and examined the child, as well as viewed a video and audiotape of the child with the defendant, and all ultimately concluded that the defendant had not sexually abused the child.[4] The plaintiff was able, nevertheless, to persuade the court to modify its order on August 16, 2000,[5] and the defendant has since participated in only supervised visitation with the child. The plaintiff also claimed that the guardian ad litem, attorney Barbara Binford,[6] did not remain with the defendant throughout his supervised visitations, as was ordered by the court and, therefore, facilitated the

---

[4] The criminal charges against the defendant are still pending.

[5] The August 16, 2000 order for supervised visitation was ordered, on October 20, 2000, to remain in full force and effect until further order of the court.

[6] Attorney Barbara Binford and Skane Services were the two authorized facilitators agreed on by the parties and the court to accompany the defendant on his supervised visits.

defendant in his sexual abuse against the child. Both the defendant and the guardian ad litem denied those accusations. Past courts have had a difficult time coming to terms with the plaintiff's claims because throughout the time she made her allegations, the plaintiff has permitted the defendant to enjoy supervised visitation and has reported only some alleged incidents to the department of children and families, the police, the courts or the guardian ad litem.

In January, 2001, the plaintiff denied the defendant visitation with their child due to the child's illness, even though he had arrived from California. The plaintiff again denied the defendant access in February, this time claiming that she *thought* that the guardian ad litem had to supervise the visits even though the other authorized facilitator, Skane Services, was present. The court held that the plaintiff knew, or should have known, that the order required either a facilitator *or* the guardian ad litem to be present.

On April 20, 2001, the plaintiff left a note on the front door of her home for the defendant, who again had flown from California, ordering the guardian ad litem and the defendant off the premises and stating that visitation would cease until a pending motion to remove the guardian ad litem was heard. The plaintiff was aware, however, that a party could disregard an order of the court only if the order had been modified or vacated. The order had not been modified or vacated prior to the April, 2001 visit.

This current segment of the never ending saga concerns the plaintiff's appeal from the July 12, 2001 order of the court, *Sheedy, J.*, which provided, among other things, that commencing in July, 2001, the defendant would have unsupervised visitation with the child. The court found that the child was loving and affectionate with the defendant during his visits, and that unsuper-

vised visitation was in the best interest of the child. The court instructed the plaintiff that if she did not comply with that order, she would be fined in an amount equal to the reasonable expenses the defendant incurred in planning for and visiting the child.

Additionally, the plaintiff was found in contempt of the July 14, 2000 court order for refusing to permit the defendant to visit with the child on April 20, 2001. The court order had been clear and unambiguous, and the court found that the plaintiff wilfully violated the order. The plaintiff was fined $1000 for the preparation and argument of the contempt motion, which was to be paid to the defendant's attorney. Pursuant to General Statutes § 52-256b (a), the court, furthermore, awarded the defendant reasonable attorney's fees of $11,010 to be paid, as well, to the defendant's attorney. Additional facts will be provided as necessary.

I

The plaintiff claims that the court's order allowing the defendant to have unsupervised overnight visitation with the child was improper. The plaintiff asserts that the evidence did not support that modification to the original visitation order. The plaintiff argues that the court failed to weigh the evidence properly concerning the credibility of the child and the criminal charges against the defendant. We disagree.

The authority of a court to render custody, visitation and relocation orders is set forth in General Statutes § 46b-56.[7] "In making or modifying any order with

[7] General Statutes § 46b-56 provides in relevant part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . .

"(b) In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference . . . ."

respect to custody or visitation, the court shall . . . be guided by the best interests of the child . . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment. . . . The trial court is vested with broad discretion in determining what is in the child's best interests." (Citations omitted; internal quotation marks omitted.) *Schult* v. *Schult*, 241 Conn. 767, 777, 699 A.2d 134 (1997). It is in that light that we review whether the court abused its discretion.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion . . . we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 775, 804 A.2d 889 (2002); *Prial* v. *Prial*, 67 Conn. App. 7, 9–10, 787 A.2d 50 (2001).

"An appellant who seeks to reverse the trial court's exercise of judicial discretion assumes a heavy burden. . . . Decision making in family cases requires flexible, individualized adjudication of the particular facts of each case. . . . Trial courts have a distinct advantage over an appellate court in dealing with domestic rela-

tions, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant. . . . This court may not substitute its own opinion for the factual findings of the trial court. . . . The ultimate question on appellate review is whether the trial court could have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Marlin* v. *Marlin*, 73 Conn. App. 570, 573, 808 A.2d 707 (2002); see also *Ford* v. *Ford*, 68 Conn. App. 173, 188, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002). "[W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *McGinty* v. *McGinty*, 66 Conn. App. 35, 40, 783 A.2d 1170 (2001); *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 432, 759 A.2d 1050 (2000). Thus, "[a] mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Ford* v. *Ford*, supra, 188; *Janik* v. *Janik*, 61 Conn. App. 175, 181, 763 A.2d 65 (2000), cert. denied, 255 Conn. 940, 768 A.2d 949 (2001).

The following additional facts are relevant to the plaintiff's claim. The defendant filed a motion, dated April 6, 2001, to terminate supervised visitation and begin unsupervised visitation with his child. On July 12, 2001, the court entered an order permitting the defendant to have unsupervised and overnight visitation with the child. The court previously had afforded a full evidentiary hearing on the motion, heard conflicting evidence from the parties and their witnesses regarding prior visits, and considered criminal allegations made against the defendant and the child's interaction with him. The court reviewed the credibility of the plaintiff, the defendant, and the experts and witnesses concerning the child's statements and conduct by both parties.

The court found that the child exhibited no fear or anxiety in the presence of the defendant, was happy in his company and behaved appropriately with him. The court concluded that the allegations made against the defendant were unsubstantiated and frivolous, and that it was in the best interest of the child to have unsupervised visitation with him.

On the basis of our review of the record, files and transcripts, we conclude that there was ample evidence demonstrating that the court properly applied the best interest of the child standard to its ruling on the motion to modify the visitation order. The court's findings were not clearly erroneous and, thus, the court did not abuse its discretion. See generally *McGinty* v. *McGinty*, supra, 66 Conn. App. 41. Accordingly, we reject the plaintiff's first claim.

## II

The plaintiff next claims that the court improperly concluded that she wilfully violated the order of the court providing the defendant access to their child and that the court improperly imposed fines and awarded unreasonable attorney's fees for her contempt. We are not persuaded.

## A

The plaintiff asserts that her actions on April 20, 2001, were not wilful. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [plaintiff] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Citation omitted; internal quotation marks omitted.) *Prial* v. *Prial*, supra, 67 Conn. App. 14.

"[O]ur review [of a finding of civil contempt] is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because . . . the findings on which it was based were ambiguous and irreconcilable . . . and the contemnor, through no fault of his own, was unable to obey the court's order." (Internal quotation marks omitted.) *In re Jeffrey C.*, 261 Conn. 189, 194–95, 802 A.2d 772 (2002); *Eldridge* v. *Eldridge*, 244 Conn. 523, 527–28, 710 A.2d 757 (1998); *In re Brianna B.*, 66 Conn. App. 695, 705–706, 785 A.2d 1189 (2001); *Wilson* v. *Wilson*, 38 Conn. App. 263, 271, 661 A.2d 621 (1995).

The plaintiff argues that the court improperly found that her conduct was wilful when she denied the defendant access to their child on April 20, 2001. In support of the plaintiff's claim that her actions were not wilful, she refers to her testimony before the court in May, 2001, in which she stated that she believed the filing of the motion to remove the guardian ad litem stayed the defendant's visitation until the issue was resolved. The plaintiff also testified that even if she understood that she had to follow the court's order while waiting for the motion to be heard, she did not have any other choice but to deny the visitation because the guardian ad litem was biased and did not perform her job effectively. The plaintiff did not trust the defendant to be with the child, considering his past and pending criminal charges, especially if the guardian ad litem was not performing her duties sufficiently. The plaintiff alleged

that the guardian ad litem did not watch the defendant and the child *at all times* during visitations.

"[A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful." *Wilson* v. *Wilson*, supra, 38 Conn. App. 275–76. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) Id., 273.

We conclude that the findings of the court were not clearly erroneous. The court's order of July 14, 2000, was clear and unambiguous, and stated that the defendant was to receive visitation rights. The modifications made subsequently were also plain and unequivocal. Nowhere in the order did it state that access to the child could be suspended while motions were pending in the court concerning the same. The plaintiff was not a newcomer to the family litigation process.

"It is axiomatic that a person may not pick and choose which court orders he will obey. . . . A party's opinion concerning the necessity for a particular order does not excuse his disobedience." (Citation omitted.) *Meehan* v. *Meehan*, 40 Conn. App. 107, 110, 669 A.2d 616, cert. denied, 236 Conn. 915, 673 A.2d 1142 (1996). "There is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid . . . [or] *should not be obeyed. A contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.*" (Internal quotation marks omitted.) *Wilson* v. *Wilson*, supra, 38 Conn. App. 275 n.8.

In its order of July 12, 2001, the court concluded that the plaintiff could not possibly have believed that she

no longer was required to obey the order of the court concerning visitation. The plaintiff had the power to obey the orders of the court and, therefore, the court properly found that her violations of its orders were wilful. The facts support the finding that the plaintiff's conduct was wilful. See, e.g., *In re Brianna B.*, supra, 66 Conn. App. 706. Despite the plaintiff's claims to the contrary, our review of the transcripts of the proceedings and the record in this case establish that the court gave thorough consideration to the circumstances surrounding the plaintiff's violation of the court's order of visitation. A full evidentiary hearing was held at which the plaintiff presented extensive testimony regarding the defendant's past indiscretions and sexual abuse charges alleged against him, the bias of the guardian ad litem and the child's reaction to visitation with the defendant. The court did not, however, find the plaintiff's claims to be credible. We will not disturb that finding on appeal.

It is necessary for the court, not the plaintiff, to interpret the court's order and to determine when the defendant is allowed access.[8] The plaintiff had the obligation to alert the court if she believed the defendant should not be granted visitation before she unilaterally decided not to comply with the specific order. See *Berglass* v. *Berglass*, supra, 71 Conn. App. 779. The plaintiff had a fair opportunity to present evidence on the contested issue, filed a motion regarding the same and should have waited for the court's response. The court did not abuse its discretion by holding the plaintiff in contempt

---

[8] By denying the defendant access, the plaintiff improperly acted as a gatekeeper to the defendant's visitation. "[I]t is incumbent upon the parties to seek judicial resolution of . . . the language of judgments." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, supra, 71 Conn. App. 778. "It is inappropriate for the custodial parent in a high conflict case to be given decision-making control over the noncustodial parent's access to minor children." Id.

of the July 14, 2000 order and all of the later modifications.

## B

The plaintiff next asserts that the court improperly fined her for contempt and awarded the defendant's attorney both the fine and his legal fees. The plaintiff claims that the fees were unreasonable because they encompassed not only the hearing and the motion for contempt, but work performed on other motions. "Sanctions for civil contempt may be either a fine or imprisonment; a fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained. . . . The fine imposed for a civil contempt may be payable to the complainant as compensation for [the party's] loss." (Internal quotation marks omitted.) *In re Brianna B.*, supra, 66 Conn. App. 707; *Lord* v. *Mansfield*, 50 Conn. App. 21, 34, 717 A.2d 267, cert. denied, 247 Conn. 943, 723 A.2d 321 (1998). "Because a compensatory fine may be imposed as part of a civil contempt, our sole remaining inquiry is whether the trial court abused its discretion." *Lord* v. *Mansfield*, supra, 34. After reviewing the record and transcripts, we conclude that the court did not abuse its discretion by fining the plaintiff as a civil punishment for her contempt of the court's order.

As for the award of attorney's fees for the defendant, "[o]rdinarily, courts in this country do not award attorney's fees to the prevailing party unless . . . the payment of such fees is provided for by statute. . . . The authority of the trial court to award attorney's fees following a contempt proceeding is well settled. Once a contempt has been found, [§ 52-256b (a)][9] establishes

[9] General Statutes § 52-256b (a) provides in relevant part: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt."

a trial court's power to sanction a noncomplying party through the award of attorney's fees. . . . The award of attorney's fees in contempt proceedings is within the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Berglass* v. *Berglass*, supra, 71 Conn. App. 787–88. "Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion." (Internal quotation marks omitted.) *Esposito* v. *Esposito*, 71 Conn. App. 744, 747, 804 A.2d 846 (2002). In this case, the court ordered that the plaintiff pay attorney's fees pursuant to § 52-256b (a) to compensate the defendant for expenses incurred in enforcing compliance with the orders of the court. The court properly applied the statute to the facts of this case. We find, therefore, that there was not an abuse of discretion.

The plaintiff contends that even if attorney's fees should have been awarded, the court improperly deprived her of a hearing on the matter. We have, previously, "upheld an award of attorney's fees despite the fact that the trial court did not hold an evidentiary hearing on the subject. In upholding the award of attorney's fees over [a party's] argument that such an award was improper in the absence of a hearing, we relied on our Supreme Court's statement that courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." (Internal quotation marks omitted.) Id., 747–48. In this action, the court had been familiar with counsel's preparation and presentation of the case. Both parties were made aware that the court would be considering attorney's fees at the end of the trial. The plaintiff did not submit any evidence concerning the attorney's fees, nor did she object to the defendant's presentation of evidence regarding the same. Accordingly, the court did not need to hold an evidentiary hearing on the subject of attor-

ney's fees, and the court did not abuse its discretion in awarding attorney's fees to the defendant in the absence of such a hearing.

The plaintiff, finally, assumes that the reasonableness of the attorney's fees is determined solely with reference to the amount of time the attorney actually spent working on the contempt motion. The plaintiff claims that the attorney's fees improperly included the preparation and argument of various other motions heard on July 12, 2001, and, thus, were not limited to the motion for contempt. The determination of reasonableness, however, takes into consideration a range of factors, of which time and labor expended are one consideration. See id.; *Tufano* v. *Tufano*, 18 Conn. App. 119, 125, 556 A.2d 1036 (1989).

It was within the discretion of the court to determine whether the effort expended was reasonable under the circumstances and to rely on its familiarity and expertise with the complex legal issues involved to determine the reasonableness of the attorney's fees. In this case, the attorney's fees represented the time and expense the defendant incurred for the preparation of the numerous postjudgment motions and proceedings, including but not limited to the contempt motion, in an effort to enforce the July 14, 2000 postjudgment order and modifications thereto. Although the attorney's fees included the preparation of motions other than the contempt motion, all of the motions and their preparation stem from the plaintiff's refusal to allow the defendant access to the child, which inevitably led to her contempt. Due to the number of contempt motions filed by the defendant in an effort to require the plaintiff to comply with the court's order of access to the child, the length of the trial and the violations found by the court, we cannot maintain that the award of attorney's fees was an abuse of discretion. See, e.g., *Tufano* v. *Tufano*, supra, 18 Conn. App. 121–26; see also *Friedlander* v. *Friedlander*,

191 Conn. 81, 86–87, 463 A.2d 587 (1983). Accordingly, we reject the plaintiff's second claim.

The judgment is affirmed.

In this opinion the other judges concurred.