Committee on Professional Conduct
No. 2002-719

WERME'S CASE

Argued: November 5, 2003
Opinion Issued: December 19, 2003

*Devine & Nyquist, P.A.*, of Manchester (*Corey Belobrow* on the brief and orally), for the committee on professional conduct.

*Paula J. Werme,* by brief and orally, *pro se.*

NADEAU, J. On October 17, 2002, the Supreme Court Committee on Professional Conduct (PCC) found that the respondent, Paula J. Werme, violated New Hampshire Rules of Professional Conduct 1.2(d) and 8.4(a), and issued a reprimand. Werme appealed. We affirm.

The following facts are relevant to this case. In 1998, Werme represented a mother in a case involving allegations of child abuse by the New Hampshire Division for Children, Youth and Families. She appealed the case to Superior Court (*Smukler,* J.). The mother, acting at the direction of Werme, disclosed information concerning the hearing to the *Concord Monitor* newspaper (*Monitor*) and provided it with confidential court records. In June 1999, an article appeared in the *Monitor* regarding the appeal. The article stated that the mother "loaned extensive medical, psychological and court records to the *Monitor* so her story, which had been confined to confidential court proceedings and documents, could be told publicly." Werme never sought permission from the judge, as required by RSA 169-C:25, II (2002) (amended 2002), before she advised her client to disclose confidential information to the *Monitor*. In response, the judge referred Werme to the PCC for possible violations of Rules 1.2(d), 3.4(c), 8.4(a) and 8.4(b).

Before the PCC, Werme admitted advising her client to violate RSA 169-C:25. Werme argued, however, that RSA 169-C:25 was unconstitutional as a prior restraint on free speech violating Part I, Article 22 of the New Hampshire Constitution and the First Amendment of the United States Constitution, and that her legal advice would remain the same unless the United States Supreme Court declared the statute constitutional. The PCC found violations of Rules 1.2(d) and 8.4(a) and issued a reprimand. This appeal followed.

■ Werme argues that her client did not violate RSA 169-C:25, and therefore that the record lacks support for finding that Werme violated Rule 1.2(d). Rule 1.2(d) provides:

> A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent. A lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

N.H. R. PROF. CONDUCT 1.2(d). Here, Werme acknowledges that she counseled her client to violate the statute. According to the plain language

of Rule 1.2(d), Werme violated Rule 1.2(d) upon counseling her client to violate the statute; whether her client actually violated RSA 169-C:25 is immaterial. Therefore, we need not decide whether Werme's client actually violated RSA 169-C:25.

Next, Werme contends that RSA 169-C:25 is unconstitutional as a prior restraint on free speech and therefore void. She argues that she cannot be in violation of Rule 1.2(d) for "counsel[ing] a client to engage, or assist[ing] a client, in conduct that the lawyer knows is criminal or fraudulent," because engaging in conduct prohibited by a void statute is not criminal. Werme argues that she is entitled to counsel a client to violate a facially unconstitutional statute. This argument is unpersuasive.

The comments to Rule 1.2(d) state: "The last clause of paragraph (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute. . . ." N.H. R. PROF. CONDUCT 1.2(d) ABA Model Code Comments. Werme argues that this comment empowered her to self-determine the validity of the statute and advise her client to disobey it because she concluded that RSA 169-C:25 is unconstitutional. We disagree.

▮Werme fails to recognize the explicit requirement in Rule 1.2(d) that any proposed course of conduct must constitute a "good faith" effort "to determine the validity, scope, meaning or application of the law." N.H. R. PROF. CONDUCT 1.2(d). Here, she had at least two "good faith" options readily available. Because Werme already had a pending case, she could have asked the trial judge for permission to disclose information concerning the hearing, raising her constitutional arguments in support of her request. *See* RSA 169-C:25, II. If permission had been denied, Werme could have appealed to this court, at which time we would have had the opportunity to determine the constitutionality of RSA 169-C:25.

Alternatively, Werme had the option to petition for declaratory relief. *See* RSA 491:22 (1997); *Radkay v. Confalone*, 133 N.H. 294, 296 (1990). "The remedy of declaratory judgment affords relief from uncertainty and insecurity created by a doubt as to rights, status or legal relations . . . ." *Radkay*, 133 N.H. at 296 (quotation and brackets omitted). We have stated before that "[a] petition for declaratory judgment is particularly appropriate to determine the constitutionality of a statute when the parties desire and the public need requires a speedy determination of important public interests involved therein." *Chronicle &c. Pub. Co. v. Attorney General*, 94 N.H. 148, 150 (1946).

Here, the mother who disclosed confidential documents clearly wanted the public to hear her story. In this situation, a declaratory judgment would have been a suitable method to determine whether the

confidentiality provisions of RSA 169-C:25 violate her right to free speech. *See id.* Again, this course of action would have allowed for appellate review by this court. Either of these options, and perhaps others, would have satisfied the "good faith" effort requirement of Rule 1.2(d).

Instead of availing herself of a decision by the trial court, Werme advised her client that it was a legitimate exercise of civil disobedience to disclose confidential information in violation of RSA 169-C:25. In fact, Werme insisted before the PCC and us that she will continue to counsel clients to violate the statute unless the United States Supreme Court declares it constitutional. Werme's decision to circumvent the judicial process is a failure to make a "good faith" effort.

As part of her argument that she did not violate Rule 1.2(d), Werme contends that RSA 169-C:25 is facially unconstitutional. In light of our holding above, we need not decide this issue. We, however, note that while *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 105-06 (1979), upholds the First Amendment rights of publishers and prohibits the States from punishing a newspaper for lawfully disseminating information from a juvenile court proceeding, it has been stated that *Smith*'s narrow holding "does not affect state statutes that make it unlawful [for others] to *give* such information to the media," 2 D. KRAMER, LEGAL RIGHTS OF CHILDREN § 23.19, at 419 (2d ed. 1994); *see In re Brianna B.*, 785 A.2d 1189, 1195 (Conn. App. Ct. 2001) (holding no violation of First Amendment rights by a nondisclosure order against parties in a child custody case). We express no opinion as to the constitutionality of RSA 169-C:25.

Finally, Werme argues that requiring her to follow Rule 1.2(d), which she contends requires her to obey an unconstitutional statute, violates her oath to support the United States and New Hampshire Constitutions. Because this argument is without merit, it does not warrant further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.