929 N.E.2d 863 (2010)
In re the PATERNITY OF K.D.
T.N., Appellant-Petitioner,
v.
B.D., Appellee-Respondent.
No. 49A02-0907-JV-693.
Court of Appeals of Indiana.
June 29, 2010.
*865 Bryan Lee Ciyou, Ciyou & Dixon, P.C., Indianapolis, IN, Attorney for Appellant.
Kimberly J. Bacon, Indianapolis, IN, Attorney for Appellee.

OPINION
NAJAM, Judge.

STATEMENT OF THE CASE
T.N. ("Mother") appeals the trial court's order prohibiting her from discussing legal proceedings with the media following the establishment of paternity in her child K.D. Mother contends that the order violates her right to freedom of speech under the First Amendment to the United States Constitution and Article I, Section 9, of the Indiana Constitution. We conclude that the juvenile court's order is an invalid prior restraint on Mother's free speech rights. We further conclude that the confidentiality provisions in the Indiana Code and Administrative Rule 9 do not prohibit Mother from talking to others about the case based on her knowledge obtained independent of the juvenile proceedings. To the extent the order prohibits such communication, the juvenile court erred. We reverse and remand with instructions.[1]

FACTS AND PROCEDURAL HISTORY
Mother gave birth to K.D. on May 17, 2001. The following month, B.D. ("Father") filed a paternity affidavit acknowledging paternity of K.D., and the parties filed a joint petition to establish paternity and support. The juvenile court approved the petition and awarded legal and physical custody to Mother and parenting time to Father. Mother and Father's on-again-off-again romantic relationship ended in 2003.
In December 2004, Mother alleged that Father had sexually abused K.D. As a result, the court eliminated Father's overnight visitation with K.D. pending investigation of the allegation. In April 2005, the court reinstated the overnights, "finding no substantiation of the allegations and that [Mother] had essentially deceived the Court in that the child's counseling had been terminated by [Mother] even before the December 2004 hearing." T.N. v. B.D. (In re Paternity of K.D.), No. 49A02-0801-JV-52, 2008 WL 4725287 (Ind.Ct. App. Oct.29, 2008) ("K.D. I") (alterations in original).
Shortly thereafter, on April 21, 2005, Father filed a petition to modify custody. The hearings on that petition began on August 24, 2006, and continued on various dates into 2007. In March 2007, while Father's petition was pending, he learned that Mother had withdrawn K.D. from school in Indianapolis and had relocated to Nashville, Tennessee, with the child. Mother had not sought prior approval from the court for the move.
On April 2, 2007, Father filed an emergency petition for modification of custody. Mother subsequently filed her notice of relocation with the juvenile court. On August 27, 2007, the court granted Father's petition and awarded him custody of K.D. On appeal, this court affirmed in an unpublished *866 decision. K.D. I, 2008 WL 4725287, at *7.
In November 2007, Mother took K.D. to Community North Hospital, where the child was examined and diagnosed with vaginosis. Mother believed the condition resulted from molestation by Father. A Preliminary Report of Alleged Child Abuse or Neglect was filed January 1, 2008. Based on interviews with the child, the parties, and the medical care providers, the caseworker reported that the child alleged that the abuse occurred when she was five years old. A doctor suspected the possibility of sexual abuse, although he told Mother that vaginosis is not related to sexual abuse. The caseworker determined that Mother's allegation was substantiated.
As a result of this sexual abuse allegation, the court placed K.D. with her maternal grandmother ("Grandmother") and the State filed a petition alleging K.D. to be a child in need of services ("CHINS"). That case was dismissed on March 18 or 19.[2] On March 24, the court interviewed K.D. in camera, and on March 25, the court held a hearing on a petition for emergency modification of custody.[3] At the conclusion of the hearing, the court found that the "sexual abuse allegations against Father [were] unsubstantiated" and that the "CHINS petition [] is no longer pending[.]" Appellant's App. at 8. As a result, the court returned K.D. to Father's custody.
Believing that the courts were not protecting K.D., Mother filed a "Judicial Complaint. . . against the court and the parties involved in that Complaint."[4] Transcript at 304. Mother also spoke with someone in the office of Governor Mitchell E. Daniels, Jr.; someone from Congressman Dan Burton's office; the office of the Marion County Sheriff; and many others. When Mother did not "get satisfaction there, [she] went to the Indianapolis Recorder." Id. at 307. In February 2009, the Recorder printed a series of three articles in which Mother renewed her allegation that Father had sexually abused K.D.
The first article, which ran on the front page, includes a photo of Mother and Grandmother. That article, entitled "A mother's journey for justice," reports that K.D. told a forensic investigator, "[a] child psychologist, and [a] police detective that [Father] had touched her inappropriately [] and that [his] stepson had been `playing house' on her." Appellant's App. at 54. The article reports further that the court subsequently awarded Father custody of K.D. and that the next judge who presided over the case refused to give "even temporary custody to [Mother], despite the investigation into alleged abuse[.]" Id. at 54. The second article names the judges and Father's attorney and states that Mother has filed complaints with the Indiana State Bar Association and the Indiana Commission on Judicial Qualifications. That article also states that the court returned K.D. to Father's custody
despite police and Child Protective Services' (CPS) investigations against the father for abuse, as well as a document *867 filed with the court that included the statements of a forensic investigator, and Jim Dalton, a local psychologist hired by CPS, who supported the validity of [K.D.'s] detailed claim of being touched by her father.
Id. at 56. These articles do not mention the juvenile court's March 25, 2008, determination that the allegation of abuse was not substantiated or that the court dismissed the CHINS case based on that allegation. And although the articles refer to K.D. by a pseudonym, the pseudonym is strikingly similar to the child's given name.
On February 19, 2009, Father filed two petitions for rule to show cause. In one of the petitions he asked the court to find Mother in contempt for having discussed the court's custody "order and on-going proceedings" with the Indianapolis Recorder "in violation of Title [sic] XX-XX-X-X and Title [sic] XX-XX-X-X of the Indiana Code of Juvenile Law." Id. at 51. On February 24, 2009, the court issued an Order Regarding the Release of Confidential Information ("Confidentiality Order"), and on March 4, Mother filed her Notice of Compliance with Respect to that order.[5]
On April 30, May 1, May 7, and June 1, 2009, the juvenile court held a hearing on Father's petitions for rule to show cause and other pending matters.[6] On June 30, the court entered an order with special findings and conclusions ("Order") that, in relevant part, denied Father's petitions for rule to show cause. However, the Order also prohibited Mother from talking to the media about the case:
V. [FATHER'S] CONTEMPT REGARDING CONTACTING THE INDIANAPOLIS RECORDER
42. The Mother agreed that she went to the Indianapolis Recorder because she did not know what else to do.
43. The Indianapolis Recorder printed three separate articles in its newspaper regarding this case. (See GAL Exhibits II; III; and IV).
44. The Mother stated that she did not understand that this case was confidential and that she was violating the law by contacting the Indianapolis Recorder.
45. The Court does not find the Mother in Contempt of Court for contacting the Indianapolis Recorder and making statements about the Father regarding this case which is prohibited because this case is confidential.
46. The Court does find that the Mother exercised extremely poor judgment in contacting the Indianapolis Recorder and making the statements which she did to the newspaper. The teachers and some of the students at [K.D.'s] school were aware of the article and read the article. The Mother clearly did not act in the best interest of [K.D.] The Court also finds that the statements Mother made to the Indianapolis Recorder regarding the Father could result in permanent damage to [K.D.]
47. However, the Court hereby informs both the Mother and Father that they are not permitted to communicate with any media source or others as this is a confidential matter. If either party violates this Court order or I.C. XX-XX-X-X, the Court may find them [sic] in Contempt *868 of Court and may impose monetary sanctions or may incarcerate them [sic] in a penal facility.
48. The Court hereby prohibits the Mother and Father from discussing this case in any method or fashion in order that the Court can make sure that [K.D.] is not subjected to such inappropriate behavior by either parent.
Appellant's App. at 36-37. Mother now appeals.

DISCUSSION AND DECISION
Mother contends that the juvenile court's Order violates her right to free political speech under the First Amendment to the United States Constitution and Article I, Section 9, of the Indiana Constitution, as applied. In this regard, Mother refers to that part of the Order that prohibits her from speaking to others about the juvenile case. Considering Mother's contention under the First Amendment, we must conclude that the Order constitutes an invalid prior restraint because it is overbroad.[7]
The First Amendment, made applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech. . . ." U.S. Const., amend. I. A prior restraint is an order forbidding certain communications that is issued before the communications occur. Gregory v. Manning (In re G.R.G.), 829 N.E.2d 114, 124 (Ind.Ct.App.2005). "Any system of prior restraints of expression comes to [the court] bearing a heavy presumption against its constitutional validity." New York Times Co. v. United States, 403 U.S. 713, 824, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) ("Pentagon Papers") (internal quotation marks and cite omitted). The protections the First Amendment affords against prior restraints are not triggered unless there is a state action. Alexander v. United States, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). The issuance of a preliminary injunction by the trial court amounts to a state action triggering the protections of the First Amendment. Id.
Mother contends that the juvenile court's Order is a prior restraint because it prohibits her from challenging the court's determinations by discussion with and publication in the media. Father characterizes Mother's speech as a personal attack on Father. But Mother's stated desire to challenge the juvenile court's decisions is the essence of political speech. See New York Times Co. v. Sullivan, 376 U.S. 254, 272-73, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ("Where judicial officers are involved, this Court has held that concern for the dignity and reputation of the courts does not justify the punishment as criminal contempt of criticism of the judge or his decision"). And "[p]olitical speech, of course, is `at the core of what the First Amendment is designed to protect.'" Morse v. Frederick, 551 U.S. 393, 403, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) (quoting Virginia v. Black, 538 U.S. 343, 365, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003)). Thus, we conclude that Mother's asserted desire to challenge the juvenile court's decision in K.D.'s case in the media constitutes political speech protected by the First Amendment. As such, the Order prohibiting that speech is a prior restraint.
Having determined that the Order constitutes a prior restraint, we must next determine whether the prior restraint in this case is valid. Again, a prior restraint *869 is not a per se violation of the First Amendment, but it comes before us with a heavy presumption that it is constitutionally invalid. See Alexander, 509 U.S. at 550, 113 S.Ct. 2766. "The Government `thus carries a heavy burden of showing justification for the imposition of such a restraint.'" Pentagon Papers, 403 U.S. at 714, 91 S.Ct. 2140. Political speech must prevail against laws that would suppress it, whether by design or inadvertence. Fed. Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449, 464, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). Laws that burden political speech are "subject to strict scrutiny," which requires the State to prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." Id.
Here, the Order does not specify the basis for the juvenile court's assertion that the proceedings in K.D.'s case are "confidential." At oral argument, Father argued that Mother's disclosure of facts involved in K.D.'s case violated privacy rights. And in their respective briefs on appeal, both parties addressed the applicability of the confidentiality provisions in Indiana Code Sections 31-39-1-1 and -2 as well as Administrative Rule 9. Thus, we will determine the validity of the Order as a prior restraint first by applying the compelling interest test to the privacy rights and then by considering the legislated confidentiality of juvenile records.[8]

Privacy Rights
We first consider whether Mother's exercise of her free speech right to challenge the judiciary, in the media or otherwise, infringes on any privacy rights held by those affected by her speech. Father argues in his brief that Mother's discussion of K.D.'s juvenile case with the media violated K.D.'s privacy rights. At oral argument, he extended the argument to include himself, his attorney, and the guardian ad litem. To the extent Father contends that his attorney, the guardian ad litem, or judicial officers have privacy rights that were violated by Mother's conduct, we cannot agree. Father has not shown that attorneys, judges, or others who participate in judicial proceedings, such as a guardian ad litem, have privacy rights associated with their conduct in their respective official capacities. Thus, we limit our discussion to considering the privacy rights of K.D. and Father.
The Supreme Court has recognized a constitutional right to information privacy under the Fourteenth Amendment, Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), though its contours continue to be refined, see Denius v. Dunlap, 209 F.3d 944, 956 (7th Cir. 2000). The constitutional right to privacy extends to minors. See Application of Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) ("neither the Fourteenth Amendment nor the Bill of Rights is for adults alone"). In the Seventh Circuit, the informational privacy right clearly covers medical records and communications. Denius, 209 F.3d at 956. But neither the Supreme Court nor the Seventh Circuit has articulated a precise test for an alleged violation of the right to confidentiality or defined the boundaries of that right. See Patrick v. City of Chicago, 662 F.Supp.2d 1039, 1061 (N.D.Ill.2009). Another federal circuit court has described privacy rights under the federal Constitution as follows:

*870 The United States Constitution does not mention an explicit right to privacy and the United States Supreme Court has never proclaimed that such a generalized right exists. The Supreme Court has, however, found certain "zones of privacy" in the amendments to the Constitution, see Roe v. Wade, 410 U.S. 113, 152-153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (tracing this development), and from these zones has specified that the constitutional right to privacy "protects two types of privacy interests: `One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" Hedges v. Musco, 204 F.3d 109, 121 (3d Cir.2000) (quoting Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (footnote omitted)). See also Sterling v. Borough of Minersville, 232 F.3d 190, 193-196 (3d Cir.2000) (tracing the development and treatment of the right to privacy in Supreme Court and Third Circuit jurisprudence). The "important decisions" referred to in the latter strand of the privacy protection "have encompassed `matters relating to marriage, procreation, contraception, family relationships, and child rearing and education.'" United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir.1980) (quoting Paul v. Davis, 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). . . .
* * *
"The right not to have intimate facts concerning one's life disclosed without one's consent" is "a venerable [right] whose constitutional significance we have recognized in the past." Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir. 1999) (citing Paul P. v. Verniero, 170 F.3d 396 (3d Cir.1999) (collecting cases)). "In determining whether information is entitled to privacy protection, [this Court] has looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112 (3d Cir.1987). . . .
The right to avoid disclosure of personal matters is not absolute, however. "Public health or like public concerns may justify access to information an individual may desire to remain confidential." Sterling, 232 F.3d at 195 (citing Westinghouse Elec., 638 F.2d at 577); see also Fraternal Order of Police, 812 F.2d at 110 ("Disclosure may be required if the government interest in disclosure outweighs the individual's privacy interest").
C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 179-80 (3d Cir.2005) (most alterations original).
Here, after the two of the three Indianapolis Recorder articles about Mother and K.D. were published, Father filed two petitions for rule to show cause, asking the court to find Mother in contempt for having discussed the court's custody "order and on-going proceedings" with the Indianapolis Recorder "in violation of Title [sic] XX-XX-X-X and Title [sic] XX-XX-X-X of the Indiana Code of Juvenile Law." Appellant's App. at 44, 51. Following a hearing, the juvenile court made the following findings and order:
42. The Mother agreed that she went to the Indianapolis Recorder because she did not know what else to do.
43. The Indianapolis Recorder printed three separate articles in its newspaper regarding this case. (See GAL Exhibits II; III; and IV).
44. The Mother stated that she did not understand that this case was confidential *871 and that she was violating the law by contacting the Indianapolis Recorder.
45. The Court does not find the Mother in Contempt of Court for contacting the Indianapolis Recorder and making statements about the Father regarding this case which is prohibited because this case is confidential.
46. The Court does find that the Mother exercised extremely poor judgment in contacting the Indianapolis Recorder and making the statements which she did to the newspaper. The teachers and some of the students at [K.D.'s] school were aware of the article and read the article. The Mother clearly did not act in the best interest of [K.D.] The Court also finds that the statements Mother made to the Indianapolis Recorder regarding the Father could result in permanent damage to [K.D.]
47. However, the Court hereby informs both the Mother and Father that they are not permitted to communicate with any media source or others as this is a confidential matter. If either party violates this Court order or I.C. XX-XX-X-X [false or inaccurate reporting of a case], the Court may find them [sic] in Contempt of Court and may impose monetary sanctions or may incarcerate them [sic] in a penal facility.
48. The Court hereby prohibits the Mother and Father from discussing this case in any method or fashion in order that the Court can make sure that [K.D.] is not subjected to such inappropriate behavior by either parent.
Appellant's App. at 36-37.
The juvenile court based its decision to prohibit Mother's further communication about the case on its findings that Mother's communication with the media was not in K.D.'s best interest and that Mother's statements to the media, printed in the articles, "could result in permanent damage to K.D."[9]Id. at 36. In so doing, the court was acting as parens patriae, in which the court's paramount interest is protecting the welfare of the child under the court's jurisdiction. See J.T. v. Marion County Office of Family & Children (In re Termination of Parent-Child Relations of J.T.), 740 N.E.2d 1261, 1264 (Ind. Ct.App.2000) (describing court's parens patriae responsibility in termination cases).
The allegation that K.D. was a victim of sexual abuse is a personal matter akin to medical information. Thus, we agree with Father that K.D. has a privacy interest in not having that information publicized. As a result, we are left with competing constitutional rights: Mother's right to free political speech versus K.D.'s right to privacy in personal matters such as her status as an alleged victim of sexual abuse by Father. Our research has disclosed no cases in this jurisdiction that address the tension between these particular rights. But balancing these two interests appears to be the appropriate approach. See Fraternal Order of Police, 812 F.2d at 110 (balancing the government's interest in disclosure of confidential information against the individual's privacy interest).
The publication of the articles regarding K.D.'s case in the Indianapolis Recorder may well have had a negative impact on K.D., but neither the juvenile court's order nor Father's brief on appeal points us to any evidence before the juvenile court showing that K.D. suffered as a result or would suffer if Mother continued to talk to the media. The order bars Mother from talking to "any media source or others" *872 about K.D.'s case. There are no exceptions for her to speak with her attorney or other legal or non-legal professionals involved in the case such as the guardian ad litem. See, e.g., In re Brianna B., 66 Conn.App. 695, 785 A.2d 1189, 1195 (2001) (holding gag order prohibiting discussion of juvenile case, excepting information obtained of juvenile proceedings or with a child advocate or legislative representative, was not an invalid prior restraint).
Here, again, Mother asserts that the Order prohibiting her from discussing K.D.'s case infringes on her First Amendment right to challenge the government, namely, the juvenile court's decision in K.D.'s case. Freedom of speech is a fundamental right. De Jonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278 (1937). And the right to challenge the government, inherent in freedom of speech, is at the foundation of our Constitution. Thus, we decline to say that Mother's right to freedom of speech must yield absolutely to all facets of what the juvenile court broadly described as "a confidential matter."
Father also contended at oral argument that Mother's talking with the media about K.D.'s case violated his privacy rights. But Father has not cited any legal authority in support of his argument that his right to privacy in this case outweighs Mother's right to free speech. To the extent Father contends that his right to privacy prevents Mother from publicly accusing him of sexual abuse, he is incorrect. Allegations of criminal activity are public as a matter of course. That is not to say that Mother's right to make accusations is unlimited. The right to free speech does not entitle the speaker to make false accusations. As such, Father is not without recourse in the event of false accusations because he could pursue Mother for defamation. Here, Father has not shown that Mother's discussion of K.D.'s case in public, with the media or otherwise, has infringed upon his right to privacy.

Legislated Confidentiality of Juvenile Records
Next we consider whether the Order is a valid prior restraint in light of the confidentiality provisions in Indiana Code Sections 31-39-1-1 and -2.[10] We begin by observing that the juvenile court has exclusive original jurisdiction over paternity proceedings such as the one before us. See Ind.Code § 31-30-1-1(3). The juvenile code provides for limited occasions in which designated persons affiliated with a case may request the court to exclude the public from the proceedings, such as during the testimony of a child witness or child victim if the court finds that an allegation or a defense involves matters of a sexual nature and closing the proceeding is necessary to protect the welfare of a child witness or child victim. Ind.Code § 31-32-6-4(a). For such cases, the legislature has enacted a procedure for requesting the court to limit access to the proceedings. Ind.Code § 31-32-6-4. While the juvenile court asserted broadly that "this case is confidential," with limited exceptions not applicable here, the proceedings in a juvenile court are open. See Ind.Code § 31-32-6-2 ("The juvenile court shall determine whether the public should be excluded from a proceeding other than a juvenile proceeding described in [Indiana Code Section 31-32-6-3 regarding delinquency proceedings.]").
*873 No one affiliated with the present case requested the juvenile court to exclude the public from the proceedings. However, on February 19, 2009, Father requested that the court find Mother in contempt for making "false statements [and] slanderous accusations" about Father and the juvenile court and for making "confidential disclosures regarding on-going litigation of this paternity case."[11] Appellant's App. at 44. In relevant part, Father alleged that the proceedings in K.D.'s case were confidential under Indiana Code Sections 31-39-1-1 and -2. Indiana Code Section 31-39-1-1 provides:
(a) This chapter applies to all records of the juvenile court except the following:
(1) Records involving an adult charged with a crime or criminal contempt of court.
(2) Records involving a pregnant minor or her physician seeking a waiver of the requirement under IC 35-1-58.5-2.5 (before its repeal) or IC XX-XX-X-X that a physician who performs an abortion on an unemancipated minor first obtain the written consent of the minor's parent or guardian.
(b) The legal records subject to this chapter include the following:
(1) Chronological case summaries.
(2) Index entries.
(3) Summonses.
(4) Warrants.
(5) Petitions.
(6) Orders.
(7) Motions.
(8) Decrees.
And Indiana Code Section 31-39-1-2 provides that "[a]ll juvenile court records subject to this chapter are confidential and are available only in accordance with IC 31-39-2. The court shall take appropriate actions to protect juvenile court records governed by this chapter from unauthorized disclosure."
A literal reading of these statutes would prohibit the release only of documentation or "records" of the juvenile court, but would not affect a party's discussion of those records. However, such a construction would emasculate the rule by allowing a litigant to read the records or documents in whole to someone unaffiliated with the litigation. That absurd possibility cannot be the intent of our legislature. See Uhlman v. Panares, 908 N.E.2d 650, 657 (Ind. Ct.App.2009) ("We presume the legislature intended the language used in the statute to be applied logically, consistent with the statute's underlying policy and goals, and not in a manner that would bring about an unjust or absurd result.").
Our Supreme Court considered the confidentiality of juvenile records in the context of juvenile delinquency proceedings in State ex rel. Shelbyville Newspapers, Inc. v. Shelby Superior Court, 272 Ind. 42, 396 N.E.2d 337 (1979). There, the Shelby Superior Court had passed an amended local rule that restricted the dissemination of information regarding juvenile offenders. Specifically, the rule provided in relevant part: "In order to effectuate the provisions of IC 31-5-8-1 [expungement and use of juvenile court records], IC XX-X-X-XX [petitions alleging juvenile delinquency] and IC XX-X-X-XX [expungement and use *874 of juvenile court records], this rule declares all juvenile records, reports, and incidents confidential." In a petition for a writ of mandate the newspaper challenged the superior court's authority to enact that rule.
In Shelbyville Newspapers, our Supreme Court held that the superior court had authority to enact the amended rule because the rule "merely implemented the statutory scheme" regarding the handling and confidentiality of juvenile court records. Id. at 339. However, the Supreme Court also held that the rule was overbroad to the extent that it "ordered that all juvenile `incidents' be kept confidential." Id. The court reasoned that the "Juvenile Code is designed to protect only the juvenile and his record. It rarely affects the release of information regarding the actual incident." Id. (emphasis added). In other words, the court held that the confidentiality rule did not apply to the facts underlying a juvenile case but only to the juvenile and his court records in such a case.
Protecting a juvenile and her court record through confidentiality legislation is a compelling state interest, and Mother does not dispute that. Instead, Mother appears to argue that her right to free speech outweighs the State's interest in protecting juveniles and their court records. Here, the Order prohibits Mother from "discussing this [K.D.'s] case in any fashion[.]" Appellant's App. at 37. Applying the reasoning from Shelbyville Newspapers and construing the statutes to avoid an absurd result, we conclude that the Order correctly prohibits Mother from discussing with anyone, including the media, the contents of the records listed in Indiana Code Section 31-39-1-1. Such a construction furthers the design of protecting the juvenile and her record. See Shelbyville Newspapers, 396 N.E.2d at 339.
But to the extent Mother argues that the Order is not narrowly tailored, we must agree. The Order prohibits Mother from discussing K.D.'s case in its entirety with anyone. That prohibition encompasses more than just K.D.'s juvenile records; it also covers incidents or underlying facts. A party may well have obtained knowledge of facts underlying a juvenile proceeding outside of that proceeding. Neither Indiana Code Sections 31-39-1-1 or -2 nor the holding in Shelbyville Newspapers requires information obtained outside the course of juvenile proceedings to be kept confidential.
We construe Indiana Code Sections 31-39-1-1 and -2 to prohibit a party's disclosure of the contents of the records listed in Section 31-39-1-1, in any fashion, to the extent that the party learned the contents of those records in the course of the proceedings or from the documents themselves. Such a rule is in keeping with the spirit of the statutes, which prohibit disclosure of juvenile case records, but does not otherwise infringe on a litigant's free speech rights. To the extent the Order in this case includes Mother's independently obtained knowledge of incidents or facts that underlie the court proceedings, and not just the contents of the records themselves, the Order is overbroad and, therefore, it is an invalid prior restraint on Mother's free speech rights.
Having determined that the Order is an invalid prior restraint, we next must consider how to reconcile the conflict between Mother's freedom of speech and the State's interest in protecting the identity of the child and the allegation that she was a victim of abuse. While the juvenile proceedings at issue here are presumptively open, the records of the proceedings and information acquired exclusively from those proceedings, are confidential. But that does not prevent litigants from discussing *875 matters learned outside of the proceedings that pertain to the juvenile case. With these things in mind, we are left with the unenviable task of fashioning instructions for the juvenile court
We begin by observing that Mother's freedom of speech is not per se superior to K.D.'s right to privacy. The court, as parens patriae, may prohibit the disclosure of the child's name as well as the use of a pseudonym closely associated with the child's name. But we recognize that that is no assurance that the child's identity will remain confidential. While the court may prohibit such disclosure, freedom of speech entitles Mother to name herself, Father, or other adults involved in the case, subject only to a tort action for defamation.[12]
We are constrained to point out that where the names of both parents are known, it would not be difficult to identify the child. As a practical matter, should Mother choose to publish her and Father's names, it is unlikely that the child's identity can be concealed. And while the record before us does not show that the child suffered actual harm as a result of the three prior Indianapolis Recorder articles, we note that the questions of whether evidence of such harm could be shown and whether that would change the result in this case are not before us.
We reverse the juvenile court's Order and remand for the court to enter a new order in accordance with this opinion. Specifically, we instruct the court to enter a new Order that prohibits Mother from disclosing to the media or anyone else information that Mother learned exclusively through the juvenile proceedings. The new order shall also prohibit Mother from disclosing K.D.'s name or using a pseudonym similar to K.D.'s name.
Reversed and remanded with instructions.
KIRSCH, J., and BROWN, J., concur.
NOTES
[1] We heard oral argument in this case on May 10, 2010.
[2] The parties have not cited to any pleadings regarding the CHINS proceedings, nor are there any CHINS records contained in the appellant's appendix.
[3] The appellant's appendix does not contain a copy of the emergency petition to modify custody.
[4] Mother alleges that the "judicial complaint" named anyone "who had direct influence and could help [K.D.] but didn't[.]" Transcript at 307. In particular, she named Judge Alicia Gooden, Judge Gary Miller, Kimberly Bacon, Denise Hayden, B.D., and Judge Marilyn Moores. Mother has not included in the record on appeal a copy of the this "judicial complaint" or any documents relating to it.
[5] The parties have not included a copy of the Confidentiality Order or Mother's notice of compliance with that order.
[6] The court also heard evidence on Father's motion for contempt citation regarding the non-payment of child support and non-payment of school expenses, Mother's Emergency Motion for Immediate Reinstatement of Parenting Time, and Mother's Motion to Modify Child Support.
[7] Because we resolve the issue presented under the United States Constitution, we need not address Mother's contention that the juvenile court's order violates her free speech rights under the Indiana Constitution.
[8] Mother does not argue that the court's order violates her constitutional right to free speech with regard to the limitation imposed under Indiana Code Section 34-47-3-4, which forbids and sets out sanctions for false reporting about a judicial proceeding. Thus, our review does not consider that part of the Order.
[9] The court also based its order on its finding that the juvenile proceedings were confidential. We discuss confidentiality under Indiana statutes and Administrative Rule 9 below.
[10] In their briefs and at oral argument the parties also debated the appropriateness of the Order's confidentiality provisions under Indiana Administrative Rule 9(G). The applicable confidentiality provision found in Rule 9(G)(1)(b)(vii) merely implements the confidentiality provisions in Indiana Code Section 31-39-1-2. We resolve the issue under the statute and, therefore, need not duplicate our discussion under the Administrative Rule.
[11] Father filed two motions for rule to show cause. The first referred to the first two articles in the Indianapolis Recorder and alleged Mother had violated Indiana Code Section 34-47-3-4 (the contempt statute). The second motion also referred to "false accusations" and the first two articles in the Indianapolis Recorder and alleged that the paternity proceedings are, "[p]ursuant to Title [sic] XX-XX-X-X and Title [sic] XX-XX-X-X . . . confidential and sealed to protect the privacy and best interests of the child." Appellant's App. at 51.
[12] At common law, defamation is defined, in relevant part, as a communication that tends to harm a person's reputation in the community's estimation or deterring third persons from dealing or associating with the person. Baker v. Tremco, Inc., 917 N.E.2d 650, 657 (Ind.2009). In order to impose liability for defamation, the United State Constitution requires a false statement of fact made with actual malice. Journal-Gazette Co. v. Bandido's, Inc., 712 N.E.2d 446, 452, 457 (Ind. 1999). Defamation per se includes communications that impute criminal conduct or sexual misconduct. Baker, 917 N.E.2d at 657. And Indiana Code Section 34-15-5-1 provides, in relevant part, that "[e]very charge of incest . . . falsely made against any person is actionable in the same manner as in the case of slanderous words charging a felony." Thus, again, in the event Mother exercises her right to freedom of speech by making false allegations against Father, Father may pursue a defamation claim against Mother.