Gayle D. EDELEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 26A01–1007–CR–362.

Court of Appeals of Indiana.

May 6, 2011.

John P. Brinson, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Gayle D. Edelen appeals her convictions for perjury and official misconduct, each a Class D felony, following a jury trial. Edelen raises two issues for our review:

1. Whether the transcript of the closed juvenile proceeding in which Edelen perjured herself is confidential and therefore inadmissible during her perjury trial; and

2. Whether the State presented sufficient evidence to support her convictions.

We hold that the transcript is not confidential because it involves an adult charged with a crime. We also hold that the State presented sufficient evidence to support Edelen's convictions. As such, we affirm.

### FACTS AND PROCEDURAL HISTORY

In September of 2008, Edelen worked as a caseworker for the Indiana Department of Child Services ("DCS") in Gibson County. One of her clients, M.D., whom the Gibson Circuit Court had declared a child in need of services ("CHINS") and placed at Life Choices[1] in Evansville, ran away from her placement facility. Edelen called Judge Meade of the Gibson Circuit Court and informed him that M.D. had left Life Choices. Judge Meade told Edelen to place M.D. at the Southwest Indiana Regional Youth Village of Vincennes ("SIRYV"), an emergency shelter, once she had been found. SIRYV is a secured facility with a fence and is locked at night. Juveniles placed at SIRYV are not free to go to work and are transported to and from court in handcuffs. It was Judge Meade's policy, consistent with Indiana Code Section 31–34–5–1, that emergency placement for a child would not last more than forty-eight hours without a hearing on the child's placement.

On October 9, local law enforcement found M.D. and transported her to SIRYV. Edelen was promptly informed of M.D.'s placement at SIRYV, but she took no action to schedule a hearing on M.D.'s placement with the Gibson Circuit Court. On October 17, Edelen asked fellow caseworker Amy Ellis to check on M.D. while Ellis was at SIRYV, which Ellis did. M.D. repeatedly asked Ellis when the next court hearing date was scheduled, and Ellis replied that she would have to check with Edelen. On November 5, M.D. contacted her attorney, Lisa Moody, to inform her that she was at SIRYV. Moody e-mailed Edelen the next day and asked her when she had learned of M.D.'s placement and how long M.D. had been placed there. On November 7, Edelen responded by e-mail, "I told you in court one day in[-]between hearings that she had been located, and

---

1. Life Choices provides counseling and therapy to juveniles to help them "to understand the consequences of bad decisions [and to] get them on the right track." Transcript at 24.

Judge [Meade] allowed me to move her to SIRVY." Transcript at 144.

That same day, Moody filed a motion in the Gibson Circuit Court for a change in placement. Moody informed the court that M.D. had been held at SIRYV for a month without a hearing. Judge Meade granted Moody's motion later that day.

On November 26, 2008, Judge Meade held a closed hearing[2] to determine why M.D. had been "locked up in Vincennes for thirty days when the most [she was] supposed to be there is forty-eight hours, [because] the parents ha[ve] a right to know who dropped the ball." *Id.* at 42. Moody called Edelen as a witness, and she was duly sworn in. The following colloquy occurred:

Q [by Moody] Did you tell [M.D.] that the court knew that she was at [SIRYV]?

A [by Edelen] Well, I told her I had—I don't know if I exactly said the court knew. I said—she asked me when she was going to have a hearing, and I said that I had not been informed that one had been set.

Q But you never informed the court after she was found; is that correct?

A Yes. On the 9th we had other hearings, and Judge [Meade] was coming out of chambers and walking out here. And in passing I told him that we had found her.

Q But you didn't follow up at that time . . . to get a court order?

A I informed our attorney [Brenda Worman] that I needed a court order.

Q But you informed her a second time then?

A I informed her that the child had eloped and then when she was discovered, I told her that she had been discovered.

Q I thought you just said you told the attorney you needed a court order.

A I told the attorney that she had been discovered.

Q You didn't know whether you needed a court order?

A I told—I talked about a verbal— yeah, I had a verbal order from Judge on the 4th.

Q You didn't know whether you needed a written order; is that correct?

A Yes, I knew I needed a written order.

Q So why did you not follow up to get that written order?

A I have never questioned the attorneys about whether they have done their job or not.

Q But you did a lot of things yourself. I mean, you're the one who called the court and asked that she be locked up when you found her. Then you said you mentioned to the [J]udge that she had been found. I mean, you were actively involved directly with the court. Why would you not follow up to get the court order?

A I can't get a court order. All I can do is inform our legal staff.

Q How many times did you ask Brenda to get the court order?

A Once.

Q Once? And you never asked her again? You never followed up with that?

A I asked her once.

Q But you didn't think that was important [enough] that you should ask again?

---

2. There is no obvious evidence in the appellate record that the November 2008 hearing was closed, but neither party disputes that fact on appeal.

A It's not my experience that I ask what—if the attorneys have done what they're supposed to do.

Q Well, is it possible that you never asked her at all and you went through and entered these entries in [M.D.'s contact log] later to cover yourself?

A No, I don't do things like that.

State's Exh. 1A at 44–46. Edelen also testified that she had orally informed Moody of when M.D. was found and that she had made entries in M.D.'s contact log to reflect that communication. And Edelen acknowledged that she had made several log entries long after the fact and even after she had received a subpoena to testify. Judge Meade concluded the hearing by dismissing the CHINS petition against M.D., who had turned eighteen shortly before the hearing.

Thereafter, the Indiana Office of the Inspector General began investigating the circumstances of M.D.'s thirty-day stay at SIRYV. Special Agent Michael Mischler, a retired Indiana State Trooper, conducted approximately twenty interviews, including an interview of Judge Meade. On October 26, 2009, the State filed its information against Edelen in the Gibson Superior Court, alleging that she had committed three acts of perjury at the November 2008 hearing and an additional act of official misconduct for committing her alleged perjury while testifying in her official capacity.

The court held Edelen's jury trial from June 7–9, 2010. The State sought to have the transcript of Edelen's testimony during the November 2008 hearing introduced into evidence, along with the DCS's contact log from M.D.'s file, but Edelen objected that the transcript and log were inadmissible because they were confidential records. The court overruled Edelen's objection but, nonetheless, ordered M.D.'s identifying information redacted from those documents.

The State called Judge Meade, Worman, and Moody as witnesses against Edelen. When asked whether Edelen had "in passing told him that we had found [M.D.]," Judge Meade responded, "No, she did not." Transcript at 35. Judge Meade also expressly contradicted Edelen's November 2008 testimony on at least two other occasions. Worman testified that Edelen had had no communication with her about M.D. prior to November 7, 2008. *Id.* at 167. And Moody testified that she had had no contact with Edelen between M.D.'s flight from Life Choices and November 6, 2008. *Id.* at 151.

The jury convicted Edelen as charged, and the trial court entered its judgments of conviction and sentences accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Admission of Transcript[3]

■ Edelen first contends on appeal that the trial court erred when it admitted the transcript of her testimony during the November 2008 juvenile proceeding into evidence during her criminal trial. Our standard of review of a trial court's admission of evidence is an abuse of discretion. *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind.Ct.App.2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the

---

3. Although Edelen also objected at trial to the admission of the DCS's contact logs, Edelen does not raise on appeal whether the trial court erred when it overruled her objection and admitted those records. We, therefore, do not consider that potential issue. *See* Ind. Appellate Rule 46(A)(8)(a); *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind.Ct.App.2003).

trial court's ruling and any unrefuted evidence in the defendant's favor. *Dawson v. State*, 786 N.E.2d 742, 745 (Ind.Ct.App. 2003), *trans. denied.*

This issue also involves the proper interpretation of a statute. As we have stated:

> Statutory interpretation is a question of law reserved for the court and is reviewed de novo. *Ind. Pesticide Rev. Bd. v. Black Diamond Pest & Termite Control Inc.*, 916 N.E.2d 168, 181 (Ind.Ct. App.2009) (quotation omitted), *trans. denied.* De novo review allows us to decide an issue without affording any deference to the trial court's decision. *Id.* Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id.* When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction. *Id.* We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *See Curley v. Lake County Bd. of Elections & Registration*, 896 N.E.2d 24, 34 (Ind.Ct.App.2008) (quotation omitted), *trans. denied.*

*State v. Prater*, 922 N.E.2d 746, 748 (Ind. Ct.App.2010), *trans. denied.* Further, "we are obliged to suppose that the General Assembly chose the language it did for a reason." *Id.* at 750.

Here, Edelen argues that "the disclosure of [her] testimony in the CH[I]NS case is barred" because the transcript of the November 2008 proceeding is a confidential record under various statutes and Indiana Administrative Rule 9. *See* Appellant's Br. at 9–10. The State raises a number of arguments in response. We address only whether the transcript of the November 2008 hearing is a confidential record.[4] We hold that it is not.

We begin our analysis with Indiana Administrative Rule 9, which is both "comprehensive and voluminous." *See Bailey v. Indiana Newspapers, Inc. (In re T.B.)*, 895 N.E.2d 321, 333 (Ind.Ct.App.2008). According to Administrative Rule 9(D)(1): "A court record is accessible to the public except as provided in section[ ] (G)...." Section (G) provides that "[t]he following information ... is excluded from public access and is confidential: ... [ (b) ](vi) Records of juvenile proceedings, pursuant to Ind.Code § 31–39–1–2, except those specifically open under statute...." Ind. Administrative Rule 9(G)(1).

Indiana Code Chapter 31–39–1 discusses the confidentiality of juvenile court records. Section 31–39–1–2, upon which Administrative Rule 9(G) relies, provides that "[a]ll juvenile court records *subject to this chapter* are confidential and are available only in accordance with IC 31–39–2." (Emphasis added.) The preceding statute, Indiana Code Section 31–39–1–1(a), limits the scope of the chapter: "This chapter applies to all records of the juvenile court except the following: (1) Records involving an adult charged with a crime or criminal contempt of court."[5]

---

**4.** We do not consider Edelen's arguments that the transcript is inadmissible under either Indiana Code Section 31–32–6–2 or Section 31–33–18–1. Section 31–32–6–2 discusses proceedings before the juvenile court, not court records. *See Bailey v. Indiana Newspapers, Inc. (In re T.B.)*, 895 N.E.2d 321, 345 (Ind.Ct.App.2008) ("For purposes of Indiana Code Section 31–32–6–2, we believe that a

'proceeding' is an actual hearing or trial, not a transcript of the hearing or trial[.]"). And Section 31–33–18–1 discusses only non-court records and reports. Finally, for the reasons discussed below, we need not consider Edelen's various assertions under Indiana Code Chapter 31–39–2.

**5.** Indiana Code Chapter 31–39–2 discusses persons entitled to access juvenile court rec-

This court has not had many occasions to apply Section 31–39–1–1(a)(1). However, in *In re T.B.* we discussed, albeit in dictum, Section 31–39–1–1(a)(1) as follows:

> we think it prudent to provide guidance to juvenile courts in future cases as to what constitutes "[r]ecords involving an adult charged with a crime" for purposes of Indiana Code Section 31–39–1–1(a)(1).
>
> Although that particular phrase is somewhat ambiguous and broad, we believe that the legislative intent behind it is unmistakably clear and narrow: to ensure that the confidentiality provisions of Indiana Code Section 31–39–1–2 do not impede the State's investigation and prosecution of the "adult charged with a crime." As such, we believe that Indiana Code Section 31–39–1–1(a)(1) applies only to those juvenile court records that relate specifically to both the adult and the charged crime. To conclude otherwise would be to subvert the confidentiality provisions of Indiana Code Section 31–39–1–2 and to convert Indiana Code Section 31–39–1–1(a)(1) into a fishing license for prosecutors and the public alike.

895 N.E.2d at 340–41 (footnote omitted; alteration omitted). In a footnote, we clarified what a fishing expedition under the statutory exception may look like: "For example, we believe that the legislature could not have intended for Indiana Code [Section] 31–39–1–1(a)(1) to apply to a dispositional order in a CHINS proceeding in which an adult charged with embezzlement is mentioned only in passing." *Id.* at 341 n. 27.

Here, we begin our analysis with the presumption that the November 2008 transcript is confidential, either because it is a legal record subject to Indiana Code Chapter 31–39–1 or because it is the transcript of a closed proceeding. *See id.* at 345–46 (holding, under Indiana Code Section 31–32–6–2, that the juvenile court erred in releasing the transcript of a confidential proceeding to news media). And with that presumption in mind, we hold that the November 2008 transcript is a record that "involv[es] an adult charged with a crime." As such, it is not a confidential record for purposes of the Edelen's perjury trial. *See* Ind.Code §§ 31–39–1–1(a)(1), –2.

Again, the statutory exception for "an adult charged with a crime" is intended "to ensure that the confidentiality provisions . . . do not impede the State's investigation and prosecution of the 'adult charged with a crime.'" *In re T.B.*, 895 N.E.2d at 340–41 (alteration omitted). If Edelen's argument on appeal—that the November 2008 transcript should be suppressed under the confidentiality provisions—were successful, it would defeat the legislature's intent for the statutory exception because it would preclude the prosecution of an adult charged with a crime.

Moreover, the November 2008 transcript "relate[s] specifically to both the adult and the charged crime." *Id.* at 341. The purpose of the proceeding was to determine why M.D. had spent a month at SIRYV without a hearing, which required Edelen's sworn testimony of her knowledge and actions during that time. Indeed, Edelen's testimony during the November 2008 proceeding does not just "involv[e]" or "relate" to her later perjury charge but *is* the crime for which she was charged. And there is no suggestion that the statutory exception has been used here as a mere fishing expedition.

ords. Section 31–39–2–1, which limits the application of Chapter 31–39–2, is identical to

Section 31–39–1–1.

Edelen also contends that the transcript "does not relate specifically to both the adult and the charged crime[ ] because ... there was no charged crime [at the time of the hearing and t]he CH[I]NS hearing did not pertain ... to a crime allegedly committed" by her. *See* Appellant's Br. at 14. That argument is not persuasive. Nothing in the language of Section 31–39–1–1(a)(1) requires the State to have charged the defendant before the creation of the record to invoke that exception. *See* I.C. § 31–39–1–1(a)(1).[6] And, contrary to her assertion on appeal and as explained above, the November 2008 hearing directly pertains to her perjury.

Edelen nevertheless asserts that "the transcript is not a 'record' as that term is defined [in Section 31–39–1–1(b) ], and as such [it] is not covered by the confidentiality statutes nor the exceptions set out in the statutes. The transcript is a special case." Reply at 11. Indiana Code Section 31–39–1–1(b) provides: "The legal records subject to this chapter *include* the following: (1) Chronological case summaries. (2) Index summaries. (3) Summonses. (4) Warrants. (5) Petitions. (6) Orders. (7) Motions. (8) Decrees." (Emphasis added.) The plain language of that statute demonstrates that its list of legal records is not intended to be an exhaustive list but, rather, merely an illustrative one. *See,*

*e.g., Sec. Trust Corp. v. Estate of Fisher ex rel. Roy,* 797 N.E.2d 789, 794 (Ind.Ct.App. 2003), *trans. denied.* Thus, the fact that "transcript" does not appear as a listed example is not dispositive.

In any event, we need not decide whether a transcript is a legal record for purposes of Section 31–39–1–1(b). *See, e.g., In re T.B.,* 895 N.E.2d at 346 n. 35 ("We leave for another day the question of whether the transcript of a juvenile proceeding is a 'legal record' pursuant to Indiana Code Section 31–39–1–1(b) . . . ."). This is because Edelen's argument is too clever by half. In her effort to avoid the exception of Section 31–39–1–1(a)(1), Edelen overshoots the confidentiality provisions entirely.

The flaw in Edelen's analysis is her assumption that all juvenile court records are presumptively confidential. That is not the case. All court records are generally available to the public, *see* Admin. R. 9(D)(1), and the same is true for proceedings in a juvenile court, *see T.N. v. B.D. (In re Paternity of K.D.),* 929 N.E.2d 863, 872 (Ind.Ct.App.2010). To be confidential, there must be an express statute or rule stating so.[7] *E.g.,* I.C. § 31–39–1–2; Admin. R. 9(G). And although the transcript here is the transcript of a closed proceeding,[8] our case law is clear that "a 'proceed-

---

6. Edelen suggests that her argument is supported by the plain language of the predecessor statute to the current Section 31–39–1–1(a). That argument lacks cogent reasoning and is waived. App. R. 46(A)(8)(a).

7. Administrative Rule 9(G)(1)(b)(vi) creates what appears to be an exception to an exception. Again, that rule provides that "[r]ecords of juvenile proceedings as declared confidential by Ind.Code § 31–39–1–2 [are excluded from public access], except those specifically open under statute." Read literally, that rule states that all court records are public, except those specifically confidential by statute, except those specifi-

cally open by statute. It is not clear if the records "specifically open by statute" are the same records that are "accessible to the public" in the first place. *See* Admin. R. 9.

8. One may think that our earlier statement that the transcript here is presumptively confidential is obviously true, or at least that it *should* be obviously true. *See In re T.B.,* 895 N.E.2d at 345–46 (holding, under Indiana Code Section 31–32–6–2, that the juvenile court erred in releasing the transcript of a confidential proceeding to news media). But the commentary to Administrative Rule 9(G) adds confusion to this question. According to the commentary: "In addition to deliberative

ing' is an actual hearing or trial, not a transcript of the hearing or trial[.]" *In re T.B.*, 895 N.E.2d at 345. Thus, the only statutes or rules under which the transcript might be identified as a confidential record are in Chapter 31–39–1.

Thus, if a "transcript" is not within the scope of the "legal records" to which Chapter 31–39–1 applies, then it cannot be within the scope of that Chapter's confidentiality provisions. *See* I.C. § 31–39–1–2 ("All juvenile court records *subject to this chapter* are confidential. . . .") (emphasis added). Instead, the transcript would simply be an open record of the court. *See* Admin. R. 9(D)(1). Accordingly, Edelen's belief that she can avoid Section 31–39–1–1(a)(1) by claiming the transcript is not a legal record is a nonstarter. Whether the transcript is or is not a legal record under Section 31–39–1–1(b), it is not subject to the confidentiality provisions of Chapter 31–39–1.[9]

In sum, the transcript of Edelen's testimony during the November 2008 proceeding before the juvenile court involves an adult charged with a crime. To prohibit the admission of that transcript would preclude the State's prosecution of Edelen for perjury, and the transcript specifically relates to Edelen and the State's charges against her. Even if the transcript were a legal record as contemplated by the statute, the transcript is not confidential under Indiana Code Section 31–39–1–1(a)(1) be-cause it involves an adult charged with a crime. Thus, the trial court did not abuse its discretion in admitting that evidence into the record of Edelen's criminal trial.

**Issue Two: Sufficiency of the Evidence**

■ Edelen also argues that the State failed to present sufficient evidence to support her convictions. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside.

Here, Edelen contends that the State failed to corroborate any of its three perjury allegations. Edelen also asserts that the "evidence on [perjury] Count III is equivocal and insufficient to show perjury." Appellant's Br. at 20. Finally, Edelen argues that the State's "charging information in Count IV [official misconduct] fails to state an offense. . . ." *Id.* at 23. We address each of Edelen's arguments in turn.

■ To prove perjury, the State was required to show beyond a reasonable

---

material excluded under this rule [e.g., subpart (G)(2)(b)(iv) ], a court may exclude from public access materials generated or created by a court reporter *with the exception of the official transcript.*" Admin. R. 9(G), cmt. ¶ 5 (emphasis added). That commentary suggests that an official transcript may never be excluded from public access, which begs the question of what the true status is of any confidential information disclosed to a court during a transcribed proceeding. But, again, we need not expressly decline to follow that commentary since, on these facts, the transcript is not confidential regardless of wheth-er it is a legal record and regardless of the status of the underlying proceeding. *See* Ind. Code § 31–39–1–1(a)(1).

9. Given our holding that the November 2008 transcript is not excluded from public access, we need not consider Edelen's further argument that only the Gibson Circuit Court may release the transcript under Administrative Rule 9(G)(3). *See* Appellant's Br. at 16. That rule applies only to information in a case record that is excluded from public access.

doubt that Edelen made a false, material statement under oath or affirmation knowing the statement to be false or not believing it to be true. *See* I.C. § 35–44–2–1(a)(1). Further, "it is well settled in Indiana that to warrant a conviction of perjury, the evidence must be no less than the direct and positive evidence of two witnesses, or one witness and corroborating facts and circumstances." *Richardson v. State*, 496 N.E.2d 620, 623 (Ind.Ct.App. 1986), *trans. denied.*

Edelen first argues that the State's only evidence against her on each of the perjury allegations "consists [only] of the sworn testimony of one witness against the sworn testimony of Edelen (Count I: [Judge] Meade; Count II[:] Brenda Worman; Count III[:] Lisa Moody[).] ... There are no corroborating facts and circumstances." Appellant's Br. at 20. We cannot agree. First, the fact that the juvenile court did not hold a hearing on M.D.'s placement until a month after she was placed in SIRYV corroborates the fact that neither Judge Meade, Attorney Worman, nor Attorney Moody had been originally informed of M.D.'s placement. And, second, Edelen's belated entries into the contact log corroborate the State's allegations that she did not initially inform anyone of M.D.'s placement at SIRYV but, instead, tried to cover her tracks by backfilling the contact log.[10] Thus, Edelen's contention that the State failed to present corroborating evidence in support of her perjury convictions is without merit.

Edelen next asserts that her testimony at the November 2008 hearing regarding what she had said to Attorney Moody about M.D.'s placement at SIRYV is equiv-

ocal and, therefore, insufficient. That testimony is quoted in detail above and shows that a reasonable jury could have concluded that Edelen was committing perjury at the time of the testimony. Edelen's argument to the contrary now is merely a request for this court to reweigh that evidence, which we will not do. *See Jones*, 783 N.E.2d at 1139.

Finally, Edelen contends that this court "should vacate the conviction [under] Count IV because ... the information does not charge a crime or any other act which [she, as] a public servant, was prohibited by law from performing." Appellant's Br. at 23. A public servant who knowingly or intentionally performs an act that the public servant is forbidden by law to perform commits official misconduct. Ind.Code § 35–44–1–2(1). Here, the State's charging information alleged that Edelen committed official misconduct when she "knowingly perform[ed] an act that she was forbidden by law to perform, to-wit: making a false, material statement under oath or affirmation...." Appellant's App. at 42B.

 Edelen's argument on this issue is that the charging information on Count IV is defective because it does not validly incorporate the elements of perjury. But "[t]he proper time for raising the insufficiency of the charging information is prior to arraignment." *Vaillancourt v. State*, 695 N.E.2d 606, 610 (Ind.Ct.App.1998), *trans. denied.* Further, "any challenge to the adequacy of an information must be made by motion to dismiss prior to arraignment. Otherwise, any error in that regard is waived." *Id.* (quotation and alteration omitted). Edelen did not file a

---

10. In her Reply Brief, Edelen suggests that this practice was not uncommon and, therefore, "there is no sinister inference to be made" from it. Reply at 17. Whether it was common practice goes to the weight the evidence should be afforded, not whether the evidence was in fact corroborating. We will not reassess the weight of the evidence. *Jones,* 783 N.E.2d at 1139.

motion to dismiss challenging the sufficiency of the State's information on Count IV, and we will not consider her allegation in the first instance. *See id.*; *see also* I.C. § 35–34–1–4. Thus, this issue is waived.

### Conclusion

In sum, the trial court did not abuse its discretion when it admitted into evidence the November 2008 transcript because the transcript involves an adult charged with a crime. The State presented sufficient evidence to support Edelen's convictions, and Edelen's argument that the charging information for Count IV is defective is untimely. Hence, we affirm her convictions.

Affirmed.

ROBB, C.J., and CRONE, J., concur.